P. H. L. MEYER, ADMINISTRATOR, APPELLEE, v. CENTRAL STATES LIFE INSURANCE COMPANY, APPELLANT.

FILED JULY 2, 1919. No. 20531.

Insurance: ACTION FOR DELAY. In an action against an insurance company for negligence in delaying action on an application for life insurance, in failing to notify the applicant of the delay or of the occasion for it, and in failing to deliver a policy during his lifetime, the evidence summarized in the opinion *held* insufficient to sustain a judgment in favor of plaintiff.

APPEAL from the district court for Platte county: GEORGE H. THOMAS, JUDGE. *Reversed and dismissed.*

*A. M. Post* and *E. M. Grossman,* for appellant.

*John J. Sullivan* and *Reeder & Lightner, contra.*

ROSE, J.

This is an action to recover $2,000 in damages for alleged negligence of the Central States Life Insurance Company, defendant, in delaying action on an application for life insurance, in failing to notify the applicant of such delay, or of the occasion for it, and in failing to deliver a policy during his lifetime; the application having been made March 8, 1916, and the applicant having been thrown from a horse and killed April 3, 1916. In the application the estate of the applicant is designated as beneficiary.    Plaintiff is the father of the decedent and is the administrator of his estate.    Defendant denied negligence and pleaded that the applicant died pending a proper, but an unfinished, inquiry into his insurability.    A jury was waived, and the trial court rendered a judgment in favor of plaintiff for the full amount of his claim:    Defendant has appealed.

As a ground of reversal it is urged that the record contains no evidence of actionable negligence.    Plaintiff relies on the following facts and conclusions: When the application was made, March 8, 1916, defendant's soliciting agent told the applicant that the insurance would be in force upon his passing a successful physical examination.    The local physician employed by defendant made an examination on that date and assured the applicant that he had successfully passed it.    The first year's premium was then adjusted by the giving of a note for $32.86.    The application and the report of the physical examination were received by defendant at the home office in St. Louis, March 13, 1916.    The report, owing to a defective instrument used by the examining physician, erroneously indicated an excessive blood pressure. March

103 Neb.—41

15, 1916, defendant, without avail, wrote to the examining physician for a re-examination of blood pressure and repeated the request March 27, 1916. The soliciting agent was advised of the delay March 28, 1916, but notice of the facts mentioned was not given to the applicant. In the ordinary course of business the policy would have been delivered by March 22, 1916. It was in fact issued March 17, 1916, and registered by the insurance department of Missouri at Jefferson City, March 18, 1916, notwithstanding the requests for a re-examination. The applicant was in good health when examined and his blood pressure was normal. He was a young man of good character, and, from the standpoint of underwriting, he was a good financial and moral risk. Except for his death the policy issued March 17, 1916, would eventually have been delivered and the premiums would have matured annually from that date. He never received his policy. The use of the defective instrument in testing the blood pressure, the delay in passing on the application and the want of notice resulted in the applicant's failure to procure insurance. The foregoing is a brief summary of plaintiff's case. Is the evidence sufficient to sustain the judgment in favor of plaintiff?

Life insurance is a contract. The meeting of the minds of the parties is essential to the execution of a policy. Honest, trustworthy underwriting requires serious inquiry into the moral character, habits, family history, financial standing and physical condition of an applicant for life insurance. Scientific knowledge and professional skill are necessary to an intelligent inquiry. The insurer in soliciting a risk and the applicant in seeking indemnity contemplate an investigation commensurate with the hazard involved. For this purpose a reasonable time is necessary. Difference in conditions may vary the time required for examination and investigation. In construing the conduct of the parties in relation to time, courts are not at liberty to fix an arbitrary period. For the purpose of considering an application the insurer

by contract may protect itself against accident, misinformation and unforeseen incidents causing temporary delays. In the present case defendant's receipt for the premium note permitted delivery of a policy within 60 days. To this applicant acceded and he was killed before expiration of that period. The investigation of the applicant's insurability was pursued by defendant in good faith. Two days after the report of the examining physician had been received at the home office of defendant in St. Louis he was requested to re-examine the applicant's blood pressure and was cautioned in relation to the instrument used in making the test. The request was renewed 10 days later, and the soliciting agent was notified of the delay with a view to promptness in passing on the application. The defective instrument did not belong to defendant, but was the individual property of the examining physician, whose authority did not extend beyond his duties in that capacity. The competency or fitness of the examining physician is not questioned. There is nothing to indicate that he did not act honestly and in good faith. On the part of defendant there was no negligence in selecting him. In performing his duties the examining physician used his own instruments and exercised his own professional skill and independant judgment. Notice to applicant that the report of the physical examination indicated excessive blood pressure and that as a consequence there would be a delay in considering the risk could only have been given between March 13, 1916, after the report was received by defendant at St. Louis, and April 23, 1916, the date of applicant's death. During that time defendant proceeded with reasonable diligence under the circumstances. Failure to give notice of the report of excessive blood pressure is not evidence of negligence. The stipulated period of 60 days for investigation had not yet expired. Neither the examining physician nor the soliciting agent had power to make the insurance effective upon the applicant's passing a suc-

cessful examination. Both were likewise without authority to bind defendant by assurance that liability for a loss would precede the approval of the application which on its face provided otherwise. The premium note was given on the express condition that its delivery to defendant depended upon the applicant's receipt of a policy. Defendant never demanded or received the premium note or the proceeds thereof. The issuance and the registration of the policy to hasten delivery upon a subsequent approval of the application do not tend to prove negligence. Such issuance and registration, according to the application itself, are not to be construed as an acceptance of the risk. On the undisputed facts the action should have been dismissed. Without regard to the insufficiency of the evidence to sustain the judgment, it is the opinion of the writer that no cause of action exists in favor of plaintiff and against defendant.

REVERSED AND DISMISSED.

LETTON, J., not sitting.

CORNISH, J., concurring.

I agree that no negligence was shown, but I am of the opinion that that part of the opinion dealing with the question of negligence should be eliminated.

In the absence of contract, the defendant owed the deceased no duty to furnish him insurance, and failure to furnish him insurance would not be the basis for an action in tort. It is possible that a case might arise, where one or more persons had conspired to defeat a person of his legal right to procure insurance, that would amount to actionable tort. When, as here, the parties to a contract in terms agree upon the time within which the application or proposition of one may be rejected or accepted by the other, the other has to the last hour of the last day for acceptance or rejection of the proposition. By the terms of the contract itself he is under no obligation to make his investigation except to suit his own convenience within the time. If the

maker of the proposition desires an early or more speedy investigation, it should be provided for in the agreement. A contrary rule would never be followed by those not learned in the law, because a layman would always think that, if the agreement gave him 60 days in which to answer, he would be entitled to the 60 days. An action in tort does not lie for refusal to enter into a contract.