. [Civil No. 4178. Filed July 12, 1940.]

[104 Pac. (2d) 165.]

NEW YORK LIFE INSURANCE COMPANY, a Corporation, Appellant, v. CHARLES. LAWRENCE, as Administrator of the Estate of THELMA LAWRENCE, Deceased, Appellee.

Messrs. Ellinwood & Ross, Mr. Jos. S. Jenckes, Jr., and Mr. Everett M. Ross, for Appellant.

Mr. Frank W. Beer and Mr. Wm. G. Christy, for Appellee.

LOCKWOOD, J.—This is an appeal by New York Life Insurance Company, a corporation, hereinafter called the company, from a judgment in favor of Charles Lawrence, as administrator of the estate of

Thelma Lawrence, hereinafter called plaintiff. The ultimate facts on which the action is based are not in dispute, and may be stated as follows:

On or about July 8, 1938, Charles Lawrence and Thelma Lee Lawrence, husband and wife, made applications to the company for a joint policy of life insurance, in the sum of $2,000, with double indemnity in the case of death resulting through accidental means. The applications each contained the following provision:

"It is mutually agreed as follows: 1. . . . that if the applicant at the time of making this application, pays the soliciting agent in cash the full amount of the first premium for the insurance hereby applied for, and so declared in this application and receives from the soliciting agent a receipt therefor on the form attached as a coupon to this application and corresponding in date and number therewith, and if the Company, after medical examination and investigation, shall be satisfied that the applicant was, at the time of making this application, insurable and entitled under the Company's rules and standards to the insurance, on the plan and for the amount hereby applied for, at the Company's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, whether the policy be delivered to and received by the applicant or not. . . . "

The soliciting agent was Van B. Brinton. Plaintiff paid to him at the time of the application the sum of $10 and promised to pay $8 more in the next week, whereupon Brinton issued to him a receipt which contained, among other things, the following provision:

"Received from Chas. Lawrence this 9 day of July, 1938, the sum of Eighteen 00/100—Dollars ($18.00), in connection with an application for insurance in New York Life Insurance Company, said application corresponding in date and number with this receipt and containing said applicant's declaration that he has

paid the sum hereby receipted for, and that he assents to the terms of this receipt as follows, to-wit:

"First. If the applicant paid the soliciting agent in cash at the time of signing the application the full amount of the first premium for the insurance therein applied for, and so duly declared in his application, and there and then received from him this receipt, and not otherwise, the Company shall be bound in accordance with the agreement which is contained in the application and printed on the reverse side of this receipt for the convenience of the applicant.

"Second. Except when each and all the conditions obtain for the insurance taking effect coincident with the signing of the application, then—. . .

"(b) If within sixty days from this date the Company fails to offer to deliver a policy to the applicant, or offers to deliver a policy upon payment of the balance of the first premium and the offer is refused, the Company will return said sum to the applicant upon demand with surrender of this receipt. . . . "

On the back of the receipt appeared the provision set forth in the application and above quoted. This sum of $18 constituted the first premium due upon the policy applied for, calculated at the standard rate for the ages of the applicants. Brinton sent the applications to the Phoenix office of the company immediately, and they were transmitted, together with the reports of the medical examiner, to the home office on July 11th. These applications were passed upon by the company's home office medical department and a policy was made up and sent to the Phoenix office on July 14th. This policy was accompanied by a letter, addressed to Brinton, which reads as follows:

"Re Application 16 017 202 Lawrence T. L.

"The above application which was submitted by you has been given careful consideration and I regret to state that the Company cannot assume the risk exactly on the basis of the policy applied for. The reason for our action is physical history and light weight.

"To meet as nearly as possible the applicant's desire for insurance, we have written a policy based on our valuation of the risk and have forwarded it for submission to the applicant. While we have been obliged to rate up the age in order to issue the policy, we take this occasion to say that its loan and cash surrender values are based upon the rated up age of the applicant.

"We believe the policy we have offered to be a very desirable contract and we recommend its acceptance."

—and an amendment, which both of the applicants were required to sign, containing the following statement:

"Amendment

"Name—C. & T. L. Lawrence (Joint Life)

"No. 16 017 212

"New York Life Insurance Company

"The New York Life Insurance Company will please accept the following answers in lieu of the answers to the corresponding questions in my application for insurance, dated the 8th day of July, 1938:

"Question No. 2

"It is understood and agreed that the insurance is written with age advanced 8 years on the life of Thelma L. Lawrence."

It will be seen by this that Thelma Lawrence was rated up eight years. This means that the premium which she was required to pay was that fixed by the company for applicants of an age eight years in excess of the real age of Thelma Lawrence, and by reason thereof it was necessary that an additional premium of $2.62 be collected before the policy would be effective.

It is the invariable policy of the company when an application for insurance is made to it to secure what is denominated inspection reports. When the policy is in the sum of $2,000 it is necessary that the inspector or correspondent making the report must have known the applicant for at least six months and have seen

him within the last thirty days, or else have secured his information from someone who has known the applicant and seen him for the period set forth. This is done so that the company may know where the applicant was and what he has been doing for the preceding six months. Upon receiving the Lawrence applications on July 11, 1938, and immediately after they were transmitted to the home office for approval, the Phoenix office prepared and transmitted to its correspondent in Chandler, which the Lawrences had given as their residence, inspection reports in their usual form. The report on Thelma Lawrence was returned to the Phoenix office and approved on July 14th, and was sent to the home office that same day. The Charles Lawrence report was returned at the same time, but was incomplete as it showed Lawrence had only been in Chandler about two months. The Phoenix office then obtained Lawrence's address prior to his coming to Chandler, which was Douglas, Arizona, and another inspection report was sent to its correspondent in Douglas on July 20th. This report was returned to the Phoenix office on July 22d. It showed that the correspondent had known Lawrence for about five months but had not seen nor heard of him for five months. This was insufficient to cover the rule of the company, and the Phoenix office again wrote Brinton to determine where Lawrence had been between the time he left Douglas and arrived in Chandler. Brinton suggested that the inspection report be sent to Oracle, which was done on July 28th. This report was returned to the Phoenix office some time between July 28th and August 9th, and showed that the correspondent there had known Lawrence for only three months. On August 9th a supplemental report was sent to the company's correspondent in Chandler who had furnished the original information, which was returned on August 13th. It was necessary that all of

these reports be obtained in order that the information required by the rules of the company be secured. On the day the last report was received by the Phoenix office it, together with the previous reports, were approved and the policy, the amendment and the instructions to the agent in regard to delivery were transmitted by mail to Brinton. He received these papers on Monday, August 15th, and attempted to contact the Lawrences on the same day for the purpose of delivering the policy and securing the additional premium and signature of the applicants to the amendment. He did not find them at home and failed to locate them, and in the evening of that day Thelma Lawrence was killed in an automobile accident. On or about August 31st the company transmitted to Charles Lawrence a check in the amount of $18, being a refund of the amount paid by him with the application of insurance, and advised him that as the policy was not issued as applied for and the amended policy had never been delivered it did not take effect. Lawrence refused to accept the check and returned it to the company, and was thereafter appointed administrator of the estate of Thelma Lawrence, and brought this action.

This is not an action on a completed contract of insurance. It is based upon the theory that it was the duty of the company, when the applications were presented to it, to accept or reject them within a reasonable time, and that it had not fulfilled this duty, and by reason thereof the estate of Thelma Lawrence had suffered damages of $4,000, because if the application had been accepted within a reasonable time the insurance policy would have been completed, and her death would have created a contract liability on the company of $4,000, or that if it had been rejected within such time she could have secured similar insurance from another company.

■ It is, of course, and always has been a rule of the common law that when an offer to enter into a contract is made by one person, there is no duty imposed upon the offeree to accept or reject it in any particular time unless there is an agreement between the parties to that effect. The only result of a failure to act within a reasonable time is that the offer is considered as withdrawn. It is contended, however, by plaintiff that a different rule applies to insurance companies, in that they must either accept or reject the offer within a reasonable time, and if they fail to do so they are liable in an action for damages, notwithstanding the fact that no contract is ever entered into.

The question is a novel one in this jurisdiction, though it has been decided in different manners in many other states. We think, however, under the facts of this case it is not necessary for us to consider what the correct general rule is if there is no agreement between the parties as to how long the insurer may have to consider the application. In the present case the premium receipt, which was accepted by the applicants as a part of their offer for insurance, contains the provision:

"(b) If within sixty days from this date the Company fails to offer to deliver a policy to the applicant, or offers to deliver a policy upon payment of the balance of the first premium and the offer is refused, the Company will return said sum to the applicant upon demand with surrender of this receipt."

It is contended by the company that this fixes a definite term during which it may consider the application, and it is under no duty of accepting or rejecting until such term has expired, and that since the facts show it did reject the application within the term set forth it violated no duty to the plaintiff. Provisions in a receipt similar to, though not identical with, this

one have been considered in other states. In the case of *Stearns* v. *Merchants' Life & Cas. Co.*, 38 N. D. 524, 165 N. W. 568, 569, the receipt contained the following provision:

"It is expressly agreed that should said company decline to issue a policy herein in twenty days from date hereof, the amount of payment actually made shall be returned to said applicant by the person signing this receipt."—and the court said: " . . . The contract in short to any fair-minded man must have been and was that the company had 20 days in which to pass upon the application, and in which to return the money if it declined to accept the risk, and that, if it did not act upon this option, the insurance would be binding. . . . "

While in the case cited the company did not reject the risk within the twenty days, and the decision held that such failure put the contract of insurance in force, the only implication which can be drawn from the language of the opinion is that if it had declined within the twenty days no liability would have arisen.

In the case of *Meyer* v. *Central States Life Ins. Co.*, 103 Neb. 640, 173 N. W. 578, 579, the action was one to recover damages on the precise theory relied upon by plaintiff in the present action. The conditions contained in the premium note are not set forth *verbatim*, but the court said:

" . . . In the present case defendant's receipt for the premium note permitted delivery of a policy within 60 days. To this applicant acceded, and he was killed before expiration of that period. The investigation of the applicant's insurability was pursued by defendant in good faith. . . . The stipulated period of 60 days for investigation had not yet expired. . . .

" . . . When, as here, the parties to a contract in terms agree upon the time within which the application or proposition of one may be rejected or accepted by the other, the other has to the last hour of the last day for acceptance or rejection of the proposition. By the

terms of the contract itself he is under no obligation to make his investigation except to suit his own convenience within the time. If the maker of the proposition desires an early or more speedy investigation, it should be provided for in the agreement. A contrary rule would never be followed by those not learned in the law, because a layman would always think that, if the agreement gave him 60 days in which to answer, he would be entitled to the 60 days. An action in tort does not lie for refusal to enter into a contract.''

What makes this case particularly in point is the fact that in Nebraska it is apparently held that, in the absence of special provisions in the application giving the company a specified time to make investigation, the rule contended for by plaintiff is applied. *Strand* v. *Bankers' Life Ins. Co. of Lincoln,* 115 Neb. 357, 213 N. W. 349.

We know of no case on facts similar to those involved in the present one which holds that when the rejection is made within the time set forth in the application and receipt that the insurer is liable for failure to accept or reject within a reasonable time. It is, therefore, not necessary for us to consider or determine the other questions raised by the appeal.

Since the policy never went into effect, and since it was rejected within the time which it was stipulated might be used by the company for the purpose of determining what its course of action should be, it did not violate any duty to the plaintiff and so could not be guilty of negligence, for negligence always necessarily involves the violation of a duty.

The judgment is reversed and the case remanded, with instructions to enter judgment for defendant.

ROSS, C. J., and McALISTER, J., concur.