533 P.2d 1181

Otto H. LINSENMEYER, Individually and as Alter Ego of Hulda Original Inc., and Hulda Original Sales Corporation, Arizona Corporations, Appellant,

v.

Hulda R. Sturges HANCOCK, Appellee.

No. 1 CA-CIV 2191.

Court of Appeals of Arizona,
Division 1,
Department B.

April 15, 1975.

Rehearing Denied May 27, 1975.

Review Denied July 1, 1975.

Frank E. Dickey, Jr., Phoenix, for appellant.

Murray Miller, Phoenix, for appellee.

## OPINION

JACOBSON, Presiding Judge.

The basic question which is dispositive of this case on appeal is whether an issue submitted to a jury without objection at the first trial may be objected to at the second trial for damages only. The appellant also questions the sufficiency of the evidence to justify the jury's verdict. Numerous other questions were raised by appellant generally regarding the trial court's discretion; we find no abuse of discretion by the trial court and no merit in the other issues raised. Therefore, such questions will not be discussed.

At the first trial in this matter the jury returned a verdict in appellee's favor in the sum of $225,000. The trial court ordered that the appellee accept a remittitur of $175,000 or, in the alternative, accept a trial on the issue of damages only. The appellee appealed this order and no cross-appeal was taken on any matters by the appellant. In Hancock v. Linsenmeyer, 15 Ariz.App. 296, 488 P.2d 501 (1971) the court ruled that the trial court had not abused its discretion by its order. Therefore, in March of 1972, a new jury trial was had on the issue of damages only.

The facts in this case are quite complicated and still not without dispute although two trials have been had on this matter. The appellee was the owner of a patent for a brassiere. She had been involved in various unsuccessful business ventures to manufacture and distribute this brassiere before coming to Phoenix. After coming to Phoenix she once again obtained financing for the brassiere but trouble developed within the corporation so she employed appellant as her attorney. The appellant advised her to act in her capacity as president of the corporation and remove all the inventory from the plant for safekeeping. The appellee acted pursuant to the appellant's advice and left a note at the plant that the appellant had prepared for her explaining her position. She then stored the inventory in an apartment owned by the appellant.

Although appellee claims that she had a buyer for the 49% of the stock owned by the disruptive shareholders, it was ultimately decided that the appellant and his business partner would purchase this stock. A sale was arranged through a third party as the appellant did not want the other shareholders to know the name of the persons buying them out for fear that the price would rise. As the appellant was desirous of obtaining control of the corporation, an agreement was entered whereby he was to purchase an additional 2% of the stock from appellee and her husband, Bruce Sturges, thus placing 51% ownership of the stock in the appellant. Pursuant to the written agreement, the appellant was to obtain the 2% controlling stock interest in exchange for the appellant's paying sixteen thousand dollars to the other shareholders for their 49% interest, loaning the corporation nine thousand dollars, and loaning the appellee two thousand dollars to pay a debt previously belonging to the corporation. The use of the terminology of loaning the money was supposedly explained by the appellant as being better for tax purposes. The appellee maintains that the appellant orally promised her specific land on which to build her dreamed-of non-profit hospital, the use of his apartment for their living quarters, and a company car. The appellant contends that he was no longer acting as the appellee's attorney at this time, but he did not advise her of this fact nor suggest that she obtain independent counsel.

Subsequently, the corporation began operations with both the appellant and Sturges as officers, shareholders and employees. An accountant was hired by the appellant and a production manager was hired by the appellee with the appellant's approval. An organization chart was drawn up on the appellant's stationery showing that he was the Chairman of the Board but he agreed at trial that this was legally incorrect and admitted that he never advised anyone of the error.

After about 3 months of operation, discontent developed, with the appellee complaining that the workmanship and materials in the brassiere had been downgraded and that her patented design had been changed. Because of this dispute, the production manager soon thereafter fired the appellee and Sturges. The appellant testified that the appellee and Sturges could not legally be fired by the production manager as they were officers of the corporation although the appellant never advised his clients of this legal deficiency. On the same day as the firing, the company car was towed away and the appellee received an eviction notice from the appellant to move from his apartment. No previous demands for rent had ever been made. After this the appellee and Sturges were forced to seek charity from their friends and lived under very poor conditions as they were virtually penniless.

In January of 1963, the appellee sued the appellant on various theories as alter ego of the corporation. She claimed that she had been damaged monetarily by her loss of control of the corporation, and the loss of the inventory and her patent; that she had been damaged emotionally, physically and monetarily by her termination of employment, eviction and harm to her reputation as a designer and harm to the reputation of her patent; and that she had been monetarily damaged by the mismanagement of the corporation and the misuse of corporate funds. The appellant counterclaimed that appellee still owed him $2,000 on the original note, for rent owed on the apartment, and for damages alleging that the appellee never owned the patent he believed he was financing. The issues raised by the counterclaim and appellant's liability were determined adversely to the appellant, and as previously stated, the second trial was on damages only.

Among the instructions given at the first trial without objection was the following instruction on outrageous conduct:

"You are instructed that if you find that the defendant, by extreme and outrageous conduct toward the plaintiff intentionally or recklessly caused severe emotional stress, you may award the plain-

tiff damages for such distress. You are instructed that in this regard and [sic] intention to cause severe emotional stress may exist only if you find that the act or acts were done for the purpose of causing the distress or ·with knowledge on the part of the defendant that severe emotional distress was substantially certain to be produced by his conduct."

At the second trial the appellant objected to the presentation of the proof of any damages flowing from this tort arguing that the appellee had neither pled nor proved this tort at the prior trial.

■ The tort of the intentional infliction of emotional distress was recognized by this state in Savage v. Boies, 77 Ariz. 355, 272 P.2d 349 (1954). The conduct alleged needs to be outrageous and beyond the bounds of decency so that the average member of the community would regard it as outrageous. Restatement (Second) of Torts § 46, Com. (d) (1965). While the law will not protect the individual from the minor manifestations of human conduct, Cluff v. Farmers Ins. Exchange, 10 Ariz. App. 560, 563, 460 P.2d 666, 669 (1969), we feel there was sufficient evidence in this instance for the question to be submitted to the jury at the first trial and for them to be instructed concerning the tort. *See* Singleton v. Foreman, 435 F.2d 962 (5th Cir. 1970). We are supported in this conclusion by the finding in the first appeal that "[i]n the case at bar we concur that there was evidence in support of the verdicts and judgment in favor of the plaintiff." Hancock v. Linsenmeyer, *supra*, 15 Ariz.App. at 299, 488 P.2d at 504.

Having determined there was sufficient evidence to justify the submission of this issue to the jury in the first trial, did appellant's failure to object to this submission at the first trial or raise it by means of a cross-appeal in the appeal of this matter preclude him from objecting to the presentation of this issue to the second jury on damages?

■ In our opinion, the appellant is so precluded. Such a result is reached by applying a rule relating to issue theory identification. It has generally been held that failure to object to instructions dealing either with issue submission or law applicable to those issues results in the non-objecting party being precluded from asserting that those issues or the law as stated is not applicable in his case. *See* State v. Atchison, Topeka and Santa Fe Railway Co., 76 N.M. 587, 417 P.2d 68 (1966); Bonicamp, Koelling and Smith v. McNeely, 191 Kan. 225, 380. P.2d 348 (1963); Rainbow Island Productions, Limited v. Leong, 44 Haw. 134, 351 P.2d 1089 (1960); Kennedy v. Farmers & Merchants State Bank, 181 Kan. 504, 313 P.2d 264 (1957); Johnson v. Peterson, 43 Wash.2d 816, 264 P.2d 237 (1953); and Peters v. Dulien Steel Products, 39 Wash.2d 889, 239 P.2d 1055 (1952). While these cases refer to such preclusions as "law of the case," at least as far as Arizona's definition of "law of the case" is concerned,[1] such a rule may be misnamed. Moreover, these two preclusion rules rest upon different theories. Precluding the non-objecting party from denying the applicability of the issue or the law as it applies in his case rests upon theories of trial by consent or waiver of right to object, while precluding second appellate review of issues previously decided rests upon a theory of judicial finality. *See* State v. Maxwell, 19 Ariz.App. 431, 508 P. 2d 96 (1973). Since the doctrine of law of the case has, at least in Arizona, embraced a specific legal concept, we prefer to classify the precluding of a non-objecting party from attacking issue or law previously sub-

[1]. "It [law of the case] is a rule of general application that the decision of an appellate court in a case is the law of that case on the points presented throughout all the subsequent proceedings in the case in both the trial and the appellate courts, and no question necessarily involved and decided on that appeal will be considered on a second appeal . . . in the same case, provided the facts and issues are substantially the same . . . ." Commercial Credit Co. v. Street, 37 Ariz. 204, 291 P. 1003 quoted in In Re Monaghan's Estate, 71 Ariz. 334, 336, 227 P.2d 227, 228 (1951).

**448**

mitted to a jury as "preclusion by consent." While admittedly the rule of "preclusion by consent" has been applied primarily in the area of limiting appellate review, we see no reason for not extending the rule to new trial situations, especially where the new trial is on the issue of damages only. *See* Williamson v. State Accident Insurance Fund, 6 Or.App. 95, 487 P.2d 110 (1971). In this case the appellant allowed a jury without objection to determine his liability on the theory of outrageous conduct. Having once allowed such a determination to be made, he may not prohibit another jury from determining the damages flowing from that previously consented to adjudication of liability. We therefore hold that the appellant is precluded from objecting to the tort of outrageous conduct as a source of damages when he was not heard to object either at the first trial or on appeal. Therefore, we do not find that the court erred in submitting this issue to the damage jury to ascertain.

 Finally, we need to decide whether the second jury verdict for the appellee in the amount of $353,000 was the result of passion and prejudice. The test to be applied in such a situation is whether the "verdict is so outrageously excessive as to suggest, at first blush, passion or prejudice." Wry v. Dial, 18 Ariz.App. 503, 515, 503 P.2d 979, 991 (1973). Considering the entire record in this matter, including the transcript from the first trial, we find that the verdict is not so unreasonable or excessive as to shock our conscience. The damages set forth were not only the non-economic suffering of embarrassment and humiliation but also the monetary loss by the appellee. The monetary damages included the apparent finding by the jury that the appellee had lost the patent, had suffered the loss of the inventory, had suffered the loss of salary, and had suffered the loss occasioned by general corporate mismanagement as evidenced by the total disarray of the corporation's finances. As the trial judge, who, with the jury, was able to observe and hear the evidence in this case, would not exercise his initial re-

sponsibility to reduce the verdict in this case, Braun v. Moreno, 11 Ariz.App. 509, 466 P.2d 60 (1970), and as after reviewing the entire transcript we find that the verdict was not the result of passion or prejudice, we will likewise not disturb the verdict on appeal.

For the foregoing reasons, the decision of the Superior Court is affirmed.

HAIRE, C. J., and EUBANK, J., concur.