603 P.2d 921

**CONTINENTAL LIFE & ACCIDENT COMPANY, Appellant and Cross-Appellee,**

v.

**David SONGER and Nancy Songer, husband and wife, Appellees and Cross-Appellants.**

**No. 1 CA–CIV 4124.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 27, 1979.

Rehearing Denied Nov. 16, 1979.

Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal, Daniel P. Hutchinson, Phoenix, for appellant and cross-appellee.

Thur & Preston, by Calvin C. Thur, Scottsdale, for appellees and cross-appellants.

## OPINION

CONTRERAS, Judge.

This appeal and cross-appeal present a substantial number of issues concerning the legal remedies available to a medical insurance applicant whose injury occurs prior to the date the application is either accepted or rejected by the insurance company's home office. The issues arose out of an action brought by appellees and cross-appellants David and Nancy Songer (Songers) against appellant and cross-appellee Continental Life and Accident Company (Continental), two other insurance companies, and two insurance agents. The action involves an effort to recover damages including benefits allegedly due under a medical insurance policy.

The complaint filed by plaintiffs was framed in three counts. Count One alleged the existence of a medical insurance contract and requested damages for the medical expenses payable under the policy, for mental distress, and punitive damages. Count Two alleged negligence on the part of the agents and Continental in processing the application for medical insurance and sought damages for the medical expenses payable under the policy and for mental distress. Count Three was based on a theory of estoppel and sought damages only in the amount that would be payable under the terms of the policy.

After summary judgment was granted in favor of all defendants except Continental 'and one of its agents, the case proceeded to trial. The jury returned a general verdict against Continental only, and assessed damages in the sum of $4,000. Judgment was entered in the amount of the verdict, together with attorneys' fees in the amount of $2,000 and costs. The trial court denied Continental's motion for a new trial or for judgment notwithstanding the verdict. In addition, the court denied the Songers' motion for a new trial on the issue of punitive damages. Continental has appealed the judgment against it and the denial of its post-trial motions. Coextantly, the Songers have cross-appealed from the denial of their motion for a new trial on the issue of punitive damages.

With the exception of the testimony concerning a "binder", the facts giving rise to the Songers' action are not in substantial dispute. In the summer of 1973, the Songers were planning an extended visit to the Island of Ponape.[1] Anticipating difficulties they might encounter in procuring insurance coverage once they left the States, the Songers wanted to obtain medical insurance before departure which would cover them on their trip. With these thoughts in mind, on August 6, 1973, they discussed major medical coverage with insurance agents, including an agent of Continental, and began to fill out an application. In the course of

---

1. For the benefit of those as unfamiliar as this court as to the location of Ponape, it is an island in the Pacific in the grouping known as Micronesia east of the Phillipine Islands. Po-nape is 176 square miles and had an estimated population of 21,000 in 1971. 13 Encyclopaedia Brittanica, 826–36 (1974).

filling out the application, Nancy Songer mentioned that she had been advised by one of her physicians that she had an "innocent" heart murmur. Arrangements were made for her to have a medical examination, which she promptly received. After her medical examination, on August 13, 1973, the agents returned to complete the application. On that date, David Songer signed the completed application, gave the Continental agent a check in the amount of $133 for the first six months' premium, and received a receipt signed by the agent.[2]

The record reflects a sharp conflict in the testimony concerning the contemporaneous statements by Continental's agent regarding the effective date of coverage and the conditions and terms affecting that coverage. The Songers testified that, during their discussion with the agents, they were assured there was a "binder", and that they were immediately covered unless and until they heard otherwise from the company. Although Continental's agent admitted he used the word "binder" in both meetings, he claimed that he intended the term to be taken in its slang sense rather than in the sense which imparts a legal significance and obligation on the part of Continental. The agent testified that he did not tell the Songers that there was immediate coverage, but instead explained to them that coverage would begin as of the date of application if the application was later accepted by the company.[3]

Approximately one week after the application was submitted and the check received by Continental, the Songers left for the Island of Ponape. After being gone from the United States for about 60 days,

and since the Songers had not heard anything from Continental about their application, Nancy Songer wrote a letter to her mother, Mrs. Knowles, asking her to inquire into the matter. On the day she received the letter—October 23, 1973—Mrs. Knowles phoned Continental's agent and asked the reason for the delay of over two months. The agent replied that the delay was due to the fact that Continental was having difficulty in obtaining necessary medical records from Mrs. Songer's doctor, apparently because the records were filed under her maiden name. On October 24, 1973, this problem was resolved and the doctor's office forwarded the necessary information to Continental.

On October 30, 1973, Mrs. Songer was involved in a motor vehicle accident on the Island of Ponape and was severely injured. A few days later, Continental gave written notice that the Songers' application for medical insurance was being declined for medical and other reasons. This notice was by means of a letter written and mailed on November 3, 1973, by Continental's agent to Mrs. Knowles. Accompanying the notice was a refund check from Continental dated October 29, 1973. The Songers never endorsed the check or accepted the refund.

The appellant's primary contention on appeal is that it was error for the trial court to submit to the jury certain instructions which misstated the law regarding temporary insurance contracts and erroneously allowed the jurors to consider oral representations to vary or contradict the written terms of the insurance application and receipt. Additionally, appellant contends that there was no legal or evidentiary basis for

---

**2.** The receipt provided as follows:

RECEIPT

**CONTINENTAL LIFE & ACCIDENT COMPANY**
HOME OFFICE BOISE, IDAHO

Received from _David Murray Songer_

The sum of $ _133.00_ ____ for _6_ months premium with this application for Health Insurance.

This payment is received subject to the provisions of this receipt and the agreement contained in the application.

This receipt is not valid unless signed by a licensed agent, nor unless the remittance, if tendered by check or draft, is honored on first presentation.

Dated _8-13-73_ ____ Licensed Agent _____

---

**3.** The written terms of the Application for Health Insurance provided, in part, that "the insurance applied for will not become effective until this application has been accepted by the Company at its Home Office."

the submission of the case on a theory of negligence with the accompanying negligence instructions. Appellant also asserts that the instructions on damages were erroneous because they allowed consideration of elements of damage which were improper under the theory of the case as presented and were not supported by the evidence. Finally, appellant argues that it was error for the trial court to deny appellant's motion for a directed verdict.

The Songers, on the other hand, contend that the case was properly submitted on the theories presented and that the instructions were proper and were supported by the evidence. In their cross-appeal, they raise several additional issues concerning the instructions with respect to punitive damages. Basically, they contend that the trial court erred in refusing to instruct on the issues of reckless disregard, willful and wanton conduct, and intentional infliction of mental suffering. The cross-appellants ask that they be granted a new trial on these issues alone.

The numerous issues raised in this appeal and cross-appeal can be considered and better understood by discussing those issues under the headings of (1) the insurance contract theory; (2) the negligence theory; and (3) the damages.

## THE INSURANCE CONTRACT THEORY

One of the primary issues presented to the jury for resolution in this case was whether a temporary contract for insurance

arose on the basis of alleged statements by Continental's agent that the Songers would immediately be covered by temporary insurance upon payment of the first premium and issuance of the receipt. The jury was instructed to determine whether an oral contract did in fact exist.[4] Appellant contends that the trial court erred in instructing on an oral contract because such instruction erroneously allowed the jury to alter the written terms of the application and receipt on the basis of inadmissible parol evidence. Appellant further contends that additional instructions improperly defined the term "binder" and incorrectly stated the standard to be used in determining whether an agreement for temporary insurance existed and the terms of such an agreement.[5]

In opposition to these enumerated contentions, appellees respond that the instructions were properly given, and thus the statements of the agents were properly considered. This position is asserted on the premise that A.R.S. § 20–1120 specifically provides for oral "binders" which, of necessity, must be proven by parol evidence.[6] Appellees further contend, through their cross-appeal, that the trial court erred in refusing to give their requested instruction, consisting of a verbatim recitation of A.R.S. § 20–1120A and –1120B which, they argue, sets forth the applicable statutory definition of a "binder" or other contract for temporary insurance in Arizona.

4. The instruction with respect to the oral contract read as follows:

"Plaintiff seeks to recover from defendant company on an oral contract of insurance which they claim existed between them and the defendant. It is not necessary that a contract of insurance be in writing; an oral contract, if it was made, is enforceable. The first question for you to determine, therefore, is whether a contract did in fact exist."

5. The pertinent instructions with respect to a binder were as follows:

"The test to be applied in determining whether a binder or other contract for temporary insurance has been given and the effective date thereof is what would be an ordinary layman's understanding of the insurance company's agreement under the facts and circumstances as you find them to exist from the evidence.

"If you find from the evidence that a binder or other contract for temporary insurance was

entered into by the parties, such coverage is not terminated until the applicant receives from the insurance company both a notice of the rejection of his application and a refund of his premium."

6. The applicable portions of A.R.S. § 20–1120 read as follows:

"A. Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.

"B. No binder shall be valid beyond the issuance of the policy with respect to which it was given, or beyond [90] days from its effective date, whichever period is the shorter."

Our review of the record, and of the substantial and conflicting body of law with respect to temporary contracts of insurance, leads us to the conclusion that it was error to instruct the jury as to the possibility of an oral contract of insurance resulting in a "binder". Our conclusion is not based upon a determination of whether there is sufficient evidence in the record to warrant the giving of those instructions. *Towers v. Johnson*, 11 Ariz.App. 455, 465 P.2d 592 (1970). Rather, it is based upon a determination of questions of law relating to the parol evidence rule and the statutory interpretation of A.R.S. § 20–1120. *See Watson Construction Co. v. Reppel*, 123 Ariz. 138, 598 P.2d 116 (App.1979); *Slater v. Westland*, 27 Ariz.App. 227, 553 P.2d 1212 (1976).

It is undisputed that there was no permanent written contract of insurance in the instant case. The only basis for a temporary, yet binding, contract of insurance would have been either a valid written binder based upon a conditional receipt, or the oral representations by Continental's agent that there was a "binder", effective from the date the Songers completed their application and paid the premium.

Since the case was presented on a theory of oral contract, we are faced with the question of whether the oral representations made by Continental's agents can be given effect as creating a temporary contract of insurance, and, if so, when that temporary insurance became effective. In the present case, the only possibility under which the representations could have been considered by the trier of fact is in either of two situations: (1) where they were properly included within A.R.S. § 20–1120 as "binders or other contracts for temporary insurance"; or (2) where consideration of such representations would not violate the parol evidence rule. As a matter of law, it is our opinion that the oral representations here cannot be considered in either situation.

■ The Songers applied for a health insurance policy. This type of policy is specifically excluded from the temporary insurance provisions of A.R.S. § 20–1120.

Subsection (D) of this statute emphatically provides that "This section shall not apply to life *or disability insurances.*" [emphasis added] Disability insurance is clearly defined in A.R.S. § 20–253 as "insurance against bodily injury, disablement or death by accident or accidental means, *or the expense thereof*, or against disablement or expense resulting from sickness, and every insurance appertaining thereto." [emphasis added] It is our opinion that the health insurance policy present in this case, which insures against the expense of sickness or bodily injury, falls within the definition of "disability insurance" set forth in A.R.S. § 20–253. Disability insurance, and the disability features of life insurance policies, amount in effect to health or accident insurance. *See* 44 Am.Jur.2d, Insurance, § 1594 at 482 (1969). Other types of insurance coverage, such as casualty or auto insurance to which A.R.S. § 20–1120 is intended to apply, present less risk for the insurer. Thus, temporary auto or casualty insurance, for example, can be provided by means of an oral binder or other temporary contract of insurance effective from the time of application to the time of acceptance or rejection by the insurance company. *See, e. g., Turner v. Worth Insurance Co.*, 106 Ariz. 132, 472 P.2d 1 (1970); *Rutherford v. John O'Lexey's Boat & Yacht Insurance, Ltd.*, 118 Ariz. 380, 576 P.2d 1380 (App. 1978); *Saggau v. State Farm Mutual Insurance Co.*, 16 Ariz.App. 361, 493 P.2d 528 (1972). Since we are of the opinion that health insurance is expressly excluded from A.R.S. § 20–1120, we further conclude, as a matter of law, that it was not error to refuse to instruct the jury as to this statutory definition of "binder" or other contract for temporary insurance.

■ We next consider, exclusive of A.R.S. § 20–1120, whether an oral contract for temporary insurance arose on the basis of the statements by Continental's agents that a "binder", effective immediately, was created when the Songers submitted the completed application. The oral representations made by Continental's agents could only have been considered to establish a

temporary contract if such evidence did not violate the parol evidence rule. This rule, in essence, provides that "[i]n the absence of fraud or mistake, parol evidence is inadmissible to change, alter or vary the express terms in a written contract." *Mack v. Coker*, 22 Ariz.App. 105, 107, 523 P.2d 1342, 1344 (1974). The express terms of the health insurance application filled out by the Songers specified that "the insurance applied for will not become effective until this application has been accepted by the Company at its Home Office." Appellees argue that, because this provision is ambiguous, or was made so by the representations of Continental's agent, the parol evidence rule does not apply to bar consideration of the representations. We disagree.

■ It is well settled that parol evidence is admissible to clarify and explain a document where an ambiguity exists on the face of the document or the language admits of differing interpretations. *See Standage Ventures, Inc. v. State*, 114 Ariz. 480, 562 P.2d 360 (1977). The Songers contend that the acceptance provision in their application was so uncertain that its meaning could not be determined from the language of the document. Although the legal effect of a given provision is dependent on the specific terms of the application and receipt used in a particular transaction, this court has, in *Pawelczyk v. Allied Life Insurance Co.*, 120 Ariz. 48, 583 P.2d 1368 (App.1978), a case factually similar to the instant case, provided some guidance as to the interpretation of a similar provision in an application for life insurance.

■ In *Pawelczyk*, the plaintiff (Mr. Pawelczyk) submitted an application for life insurance, the critical language of which read as follows:

"IT IS UNDERSTOOD AND AGREED . . . that the insurance applied for shall take effect only if and when (a) this Application is approved by the Company at its Home Office in Des Moines, Iowa and (b) the first premium is paid while

the Proposed Insured is in good health . . . .''
*Id.* at 51, 583 P.2d at 1371.

Shortly after submission of this application, Mr. Pawelczyk underwent the required medical exam and paid the first premium. At the same time, the insurance agent told him that the coverage would be in effect as of the date Mr. Pawelczyk passed the physical examination. The application was ultimately rejected by the insurance company, but in the interval of time between payment of the premium and this rejection, Mr. Pawelczyk suffered a severe heart attack. The insurance company indicated during the trial that rejection of Pawelczyk's application was based upon the heart attack.

In *Pawelczyk*, it was argued, *inter alia*, that the provision quoted above was ambiguous in that it could not be determined whether an applicant's insurability was to be determined on an objective basis at the time the first premium was paid, or whether events subsequent to the payment of the premium (such as the heart attack) could be considered in acting upon the application. In holding that the provision presented no ambiguity, the court stated: "Courts must give effect to agreements as they are written, however, and ambiguities will not be found or created where they do not exist in order to avoid a harsh result." *Id.* at 52, 583 P.2d at 1372. The court in upholding the enforcement of the parol evidence rule, concluded that:

"... the [oral] representation in question would clearly vary the terms of the application and the contemplated contract of which it would form a part, and that its admission would be, therefore, in violation of the parol evidence rule. *Roscoe v. Bankers Life Insurance Co. of Nebraska*, 22 Ariz.App. 282, at 287, 526 P.2d 1080, at 1085; 9 *G. Couch on Insurance 2d*, § 39:86 (2d ed. 1962).''

*Pawelczyk v. Allied Life Insurance Co.*, 120 Ariz. at 53, 583 P.2d at 1373.

It is our opinion that the same conclusion reached in *Pawelczyk* obtains in the instant case. The quoted language in the Songers' application for health insurance is too clear

to admit of any doubt. The only difference between the application in *Pawelczyk* and the application of the Songers is that the *Pawelczyk* application requires that is be "approved" [at the home office], whereas the Songers' application requires that it be "accepted" [at the home office]. This is a distinction without substantive difference. There could be no insurance in effect until the application was "accepted *by* the Company *at* its Home Office." *See Dove v. Arkansas National Life Insurance Co.*, 238 Ark. 1033, 386 S.W.2d 495 (1965).

In view of our conclusion that there was no ambiguity in the application, the parol evidence rule necessarily bars consideration of the oral representations of the agent. The representation by Continental's agent that the insurance would take effect immediately upon completion of the application and payment of the premium clearly varies the terms of the application and the contemplated contract of which it would form a part. Therefore, admission and consideration of such representations as evidence of a contract would be in violation of the parol evidence rule. *See Pawelczyk v. Allied Life Insurance Co., supra; Roscoe v. Bankers Life Insurance Co. of Nebraska,* 22 Ariz. App. 282, 526 P.2d 1080 (1974); G. Couch, 9 Couch Cyclopedia of Insurance Law, § 39:86 at 493 (2d ed. R. Anderson 1962).

■ By reason of the foregoing extended, but necessary, discussion, it is our conclusion that the jurors were erroneously instructed as to the law or oral contracts of insurance. Although, as we discuss later in this opinion, the jury could have found liability based on the theory of negligent delay of the insurance company in processing and acting upon the Songers' application, we must nevertheless reverse and remand this case because of the erroneous instructions which were based on an inapplicable theory of law. As was stated in *Holtz v. Holder,* 101 Ariz. 247, 418 P.2d 584 (1966):

> "Where an erroneous instruction has been given on the law, and a correct instruction might have produced a different result, the error is not cured by the fact that the jury might have found for the prevailing party on some basis unaffected by the error."

*Id.* at 251, 418 P.2d at 588.

Because of the general verdict rendered, we cannot determine whether the jury found for the Songers on the contract theory, the negligence theory or the estoppel theory presented to them. They may have reached their verdict based entirely on the oral contract theory or have completely discounted it. In view of our conclusion that it was error to allow the jury to consider parol evidence, we can only conclude that the jury might have reached a different result but for such evidence and the instructions erroneously given. Therefore, the judgment of the trial court is reversed and a new trial is ordered.

## THE NEGLIGENCE THEORY

■ We have specifically held that there was reversible error in submitting this case to the jury on the temporary oral contract theory and, ordinarily, we would not address the parties' other contentions. However, since this case is being reversed and remanded for a new trial, we feel compelled to discuss what may be the "law of the case" in the superior court if the issues and evidence remain substantially the same as presented here.[7] Thus, for the guidance of the court and counsel, we will discuss the issues of negligence and damages, particularly the issue as to whether, in Arizona, an insurance company can be held liable for negligent delay in processing an application.

7. The "law of the case" is " 'a rule of general application that the decision of an appellate court in a case is the law of that case on the points presented throughout all the subsequent proceedings in the case in both the trial and the appellate courts . . . provided the facts and issues are substantially the same as those on which the first decision rested, and, according to some authorities, provided the decision is on the merits.' " *Commercial Credit Co. v. Street,* 37 Ariz. 204, 207, 291 P. 1003, 1004 (1930) *quoted in Linsenmeyer v. Hancock,* 23 Ariz.App. 444, 447, n.1, 533 P.2d 1181, 1184, n.1 (1975). *See Employers Mutual Liab. Ins. Co. of Wisconsin v. Industrial Comm'n,* 115 Ariz. 439, 565 P.2d 1300 (App.1977).

Appellees here argue that the tort theory of liability for "negligent delay" by an insurance company in the processing of an application should be recognized in Arizona and that the jury was correctly instructed as to the legal standards by which to judge appellant's conduct on the issue of negligence. Appellant, on the other hand, contends that it was error to submit the case and instruct the jury on negligence because neither Arizona case law nor the evidence presented at trial support submission of the case on this theory.

The "negligent delay" theory, generally stated, is that an insurance company is under a duty to act upon an application for insurance within a reasonable period of time, and a violation of this duty, with resultant damages, subjects the company to liability for negligence. In reviewing the case law from other jurisdictions on the question of whether an insurer may be so liable in tort, we find there is an almost even division of authority. *See* Annot., 32 A.L.R.2d 487 (1953 & Supp.1977).

There are no cases in Arizona which have expressly accepted or rejected the "negligent delay" concept. We do, however, note that this court has very recently held that Arizona does recognize a cause of action in tort for the alleged bad faith refusal of an insurer to pay a claim of its own insured. *Noble v. National American Life Insurance Co.*, 1 CA–CIV 4006 (filed June 28, 1979). The holding in *Noble* was predicated on the recognition that an insurer under Arizona case law has a duty "to deal fairly with its insured." *Id.* slip op. at 4; *see Parsons v. Continental National American Group*, 113 Ariz. 223, 550 P.2d 94 (1976); *General Accident Fire & Life Insurance Corp. v. Little*, 103 Ariz. 435, 443 P.2d 690 (1968). This duty is "imposed by law by virtue of the contractual relationship but [is] independent of its terms." *Noble v. National American Life Insurance Co., supra* slip op. at 5. Although *Noble* is distinguishable from the instant case in that there was no question as to the existence of an insurance contract in *Noble*, we are of the opinion that a similar duty of dealing fairly should be imposed in situations where, as here,

there may be some question as to the existence of a contract for insurance and the insurer unreasonably delays in processing the application after having accepted the payment of a premium. *See* J. Appleman, 12 Insurance Law and Practice § 7226, at 330 (1943 & Supp.1979 at 311).

Resolution of the negligence theory advanced by appellees in the instant case was left open by our supreme court in the case of *New York Life Insurance Co. v. Lawrence*, 56 Ariz. 28, 104 P.2d 165 (1940). In *Lawrence*, a complaint was filed, on the tort theory only, by the administrator of the estate of a woman who had died prior to the time any action was taken on her application for life insurance. The court, in holding that the company violated no duty owed to the applicant, based its decision on the fact that the company had rejected the policy within the 60-day time period expressly stated in the application. The *Lawrence* court limited its decision to the particular facts of that case, stating that "under the facts of this case it is not necessary for us to consider what the correct general rule is if there is no agreement between the parties as to how long the insurer may have to consider the application." *Id.* at 34, 104 P.2d at 167.

After reviewing and studying cases from other jurisdictions, it is our opinion that in the absence of an express provision in the application as to the length of time an insurer has to consider the application, the insurer is under a duty to act upon an application for insurance within a reasonable period of time and a violation of this duty with resultant damages subjects the insurer to liability for negligence. We agree with "[t]he more liberal, and probably the better rule . . . that an insurance company obtaining an application for insurance is under a duty to accept it or to reject it within a reasonable time, and is liable if it delays unreasonably in acting thereon." J. Appleman, *supra* at 326–27.

Our express recognition of the negligent delay theory is in accord with and justified by the precepts of individual consumer pro-

tection and the public interest. Because insurance companies are licensed and regulated by the state, they are part of an industry which is affected by the public interest. *Fireman's Fund Insurance Co. v. Arizona Insurance Guarantee Ass'n*, 112 Ariz. 7, 536 P.2d 695 (1975); *Employers' Liability Assurance Corp. Ltd. v. Frost*, 48 Ariz. 402, 62 P.2d 320 (1936). As a result, they can and should be held to a broader legal responsibility than are parties to purely private contracts. This is especially true in cases where the insurance carriers have solicited and obtained an application for insurance, and have received payment of a premium. *See Barrera v. State Farm Mutual Automobile Insurance Co.*, 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969).

In addition, and since insurance companies unilaterally prepare the applications and set forth the conditions for acceptance, the parties are not in an equal bargaining position. There must, in all fairness, be some degree of correlative consumer protection. We are of the opinion that an insurance company which retains an application for medical insurance that does not contain a provision as to the time within which the application must be acted upon, and also retains payment of a premium, may be held liable in damages if it fails to either accept or reject the application within a reasonable period of time. It is generally the rule that the determination of what constitutes a reasonable time is a question for the jury. *Milbank Mutual Insurance Co. v. Schmidt*, 304 F.2d 640 (8th Cir. 1962); Annot., *supra* at 501. In the instant case, then, the jury was properly instructed as to the legal standard by which to judge appellant's conduct on the issue of negligence, and specifically whether Continental acted within a reasonable time.[8]

## DAMAGES

The final questions for our consideration relate to the extent and measure of damages to which an insurer may be held liable where it has been determined that the insurer has negligently delayed in processing an application. We address the questions raised by the parties regarding damages primarily for the guidance of court and counsel in the new trial. It must be kept in mind, though, that our conclusions, in part, are based upon the evidence in the present record.

The general rule is that the amount of damages recoverable for negligent delay in passing upon an application for insurance cannot exceed the amount of insurance applied for or the amount of benefits which the applicant would have received had there been an actual contract of insurance. Annot., 32 A.L.R.2d § 28 at 536 (1953). The cases so holding generally predicate their conclusions on the traditional concept that nonpayment and delay in paying benefits is strictly classified as a breach of contract action and because an insurance policy is a contract to pay money only, recovery is limited to the amount due plus legal interest. *See* Note, Extra Contractual Damages in Suits on Insurance Policies, 46 U.Cin.L. Rev. 170, 172 (1977); Note, The Availability of Excess Damages for Wrongful Refusal To Honor First Party Insurance Claims— An Emerging Trend, 45 Fordham L.Rev. 164, 164 (1976). This rule has also been justified on the ground that it provides a simple, direct and certain measure of damages. But simplicity and directness should not justify the hardship or economic losses which can be caused by such a rule. In a

---

8. Although not discussed in the briefs, we note that the instant case was submitted to the jury on a third theory—estoppel. Our review of the cases which have considered this theory in situations factually similar to this one leads us to the conclusion, consistent with this opinion, that it is permissible to instruct the jury to consider the estoppel theory as an adjunct to a claim for negligent delay by an insurance company. The general rule of applicability is perhaps best stated by Appleman.

"By failure to act upon an application duly made, the period of delay may be so unreasonable as to estop the insurer from denying liability. A retention of the application and premium payment for an unreasonable and unwarranted length of time may raise an inference of acceptance. Of course, the question of how long the insured may rely on a presumption of acceptance depends on the facts of each case."

J. Appleman, *supra* at 328–29.

**304**

very realistic sense, the certainty of this rule can result in insurance carriers taking unfair advantage of their policyholders or prospective policyholders since the carriers can rest secure with the knowledge that their maximum liability exposure is limited to the contractual amount due plus legal interest. However, we are of the opinion that damages need not be restricted solely to the amount which would have been paid if a contract of insurance had existed.

We have previously stated that an insurer is under a good faith duty to deal fairly with the applicant for insurance and to act upon the application within a reasonable time. Our finding of such duty rests upon the dual propositions that an insurance company is affected with the public interest, and that the parties to an application are not in an equal bargaining position. The good faith duty arises from the insurer's relationship to the public in general, and to an applicant in particular, and is not dependent upon a specific finding that there is a contract. Rather, it is in the nature of an implied or quasi-contract between the applicant and insurer that the latter will act upon the application within a reasonable time. *See Republic National Life Insurance Co. v. Chilcoat*, 368 P.2d 821 (Okl.1961); *Columbian National Life Insurance Co. v. Lemmons*, 96 Okl. 228, 222 P. 255 (1923). Since we view the liability discussed above not as being dependent on a finding of a contract, but as being analogous to that in tort actions, we are of the opinion that the general rules with respect to damages in a negligence action should apply. *See Hinds v. United Insurance Co. of America*, 248 S.C. 285, 149 S.E.2d 771 (1966).

As a general rule, a plaintiff in a tort action is entitled to recover such sums as will reasonably compensate him for all damages sustained by him as the direct, natural and proximate result of such negli-

gence, provided they are established with reasonable certainty. *Valley National Bank v. Brown*, 110 Ariz. 260, 517 P.2d 1256 (1974); *Myers v. Rollette*, 103 Ariz. 225, 439 P.2d 497 (1968); *Reliable Electric Co. v. Clinton Campbell Contractor, Inc.*, 10 Ariz. App. 371, 459 P.2d 98 (1969). Since this rule is applicable in the instant case, the Songers, upon retrial and provided liability is established, are entitled to recover the damages which were directly caused by the conduct of Continental.

In their cross-appeal, the Songers question whether they were entitled to an instruction regarding recovery for intentional infliction of emotional distress. Under Arizona law, which does recognize the tort of intentional infliction of emotional distress,[9] one may recover such damages "only where the defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Patton v. First Federal Savings & Loan Ass'n*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978); *Cluff v. Farmers Insurance Exchange*, 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969); Restatement (Second) of Torts § 46, Comment d (1965).

Although there is clearly a question as to whether Continental was negligent in failing to act upon the Songer application for more than 80 days, we find no evidence in the present record that Continental committed an act which could be classified as "extreme and outrageous". It is the duty of the court (rather than the jury) to determine, in the first instance, whether the acts complained of can be considered extreme and outrageous so as to substantiate a claim for relief. *Patton v. First Federal Savings & Loan Ass'n, supra; Cluff v. Farmers Insurance Exchange, supra*; Restatement, *supra* § 46, Comment H.

---

9. Arizona recognizes the tort as it is set forth in The Restatement (Second) of Torts § 46(1) (1965). *Bendalin v. Valley National Bank of Arizona*, 24 Ariz.App. 575, 540 P.2d 194 (1975); *see Savage v. Boies*, 77 Ariz. 355, 272 P.2d 349 (1954). Section 46(1) provides:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Under the present state of the record, we agree with the trial court's determination that there was insufficient evidence of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Barring production of such evidence at the new trial, it is our opinion that the trial court would not be in error in refusing to so instruct the jury.

 Finally, the question is presented of whether punitive damages may be awarded, or for that matter, even considered in actions of this nature. It is the well established rule that punitive damages may be awarded in tort actions where the conduct of the wrongdoer is wanton, reckless or shows spite or ill will or where there is a reckless indifference to the interests of others. *Smith v. Chapman*, 115 Ariz. 211, 564 P.2d 900 (1977); *Salt River Valley Water Users' Ass'n v. Giglio*, 113 Ariz. 190, 549 P.2d 162 (1976); *Neilson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514 (1966). With respect to this question, we adopt and incorporate our previous statements regarding the question of consideration of damages for the intentional infliction of emotional distress. We further note that our review of the present record discloses that there is no evidence of wanton conduct or reckless indifference on the part of Continental, and thus there was a lack of sufficient evidence which would have supported an instruction on the issue of punitive damages. For the reasons stated, this case is reversed and remanded for retrial.

WREN, P. J., and DONOFRIO, J., concur.