529 So.2d 540 (1988)
MISSISSIPPI INSURANCE GUARANTY ASSOCIATION
v.
Richard H. VAUGHN.
No. 57905.
Supreme Court of Mississippi.
April 27, 1988.
Rehearing Denied August 24, 1988.
*541 P.N. Parkins, III, John L. Low, IV, Robert H. Pedersen, Watkins & Eager, Jackson, for appellant.
Robert L. Wells, Young, Scanlon & Sessums, Jackson, for appellee.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Paul R. Knighten, Sp. Asst. Atty. Gen., Jackson, for amicus curiae.
En Banc.
ROBERTSON, Justice, for the Court:

I.
Today's appeal asks whether the insured under a major medical insurance policy is protected from his insurer's insolvency by the Mississippi Insurance Guaranty Association Law. Careful attention to the coverage section of the law requires a negative response, that is, that the statutory language excludes from coverage the policy presented. As the Circuit Court held to the contrary, we reverse and render.

II.
In May of 1983, Richard H. Vaughn purchased a major medical insurance policy from State Security Life Insurance Company (SSLIC). Thereafter, on October 2, 1983, and through November 5, 1983, Vaughn was hospitalized for surgery at the Mississippi Baptist Medical Center and incurred expenses within the coverage of the policy. Vaughn submitted a claim in the amount of $24,458.04 which SSLIC refused to pay. On March 8, 1984, SSLIC rescinded the policy retroactive to the date of issuance and refunded Vauglin's premium payments.
On October 11, 1984, Vaughn commenced this civil action by filing his complaint in the Circuit Court of Rankin County, Mississippi. Vaughn named SSLIC and its agent as defendants in his suit. In July of 1985, Vaughn amended his complaint to name as an additional defendant, Mississippi Insurance Guaranty Association (MIGA).[1] This step was prompted by SSLIC's insolvency. It seems that in October of 1984, Commissioner of Insurance George Dale had asked the Chancery Court of Rankin County to put SSLIC into receivership. On October 12, 1984, the Court appointed Commissioner Dale, as permanent receiver. On November 8, 1984, the State of Mississippi by and through Commissioner Dale, was granted permission to intervene in this action as an additional party defendant.
In due course, MIGA moved to dismiss Vaughn's amended complaint for failure to state a claim, arguing that the Mississippi Insurance Guaranty Association Law, Miss. Code Ann. §§ 83-23-101, et seq. (1972), did not cover insurance such as that written by SSLIC for Vaughn's benefit.
On January 22, 1986, the Circuit Court overruled MIGA's motion, holding that Miss. Code Ann. § 83-23-105's exclusion of "disability" insurance from coverage did not also exclude accident and health insurance such as that held by Vaughn. "The Court is of the opinion that Miss. Code Ann. § 83-23-105 (1972), including the term `disability' is clear and unambiguous, and hence, this Court cannot and does not construe `disability' to encompass health and accident insurance."
In October of 1986, the parties presented the Circuit Court with a list of stipulations, waiving trial by jury and agreeing upon $23,723.60 as the amount of Vaughn's expenses *542 that MIGA would be required to pay if the policy were covered by the Guaranty Law.
On October 17, 1986, the Circuit Court entered final judgment for Vaughn and against MIGA and Commissioner Dale in the sum of $23,723.60 plus post-judgment interest. This appeal has followed.

III.
The Mississippi Insurance Guaranty Association Law was enacted to protect policy holders of certain kinds of insurance in the event of their insurer's insolvency.[2] Within the coverage of the Guaranty Law are "all kinds of direct insurance except life, title, surety, disability, credit, mortgage guaranty, and ocean marine insurance." Miss. Code Ann. § 83-23-105 (1972). [Emphasis added] Appellant Vaughn bought a major medical insurance policy, generically an accident and health policy, from the now insolvent State Security Life Insurance Company (SSLIC). The question on this appeal is whether his policy was covered under the Guaranty Law and hence underwritten by MIGA.
We construe such a statute according to familiar principles. We give the statute that reading which best fits the legislative language and is most consistent with the best statement of policies and principles justifying that language. Warren County v. Culkin, 497 So.2d 433, 436 (Miss. 1986). We seek no historical fact. "We do not inquire what the legislature meant; we ask only what the statute means." Holmes, Collected Legal Papers 207 (1920). We afford the statute the best fit reading it may be given today. We seek the best statement of policies and principles which may justify the statute today, not in 1970 when it was originally enacted. We also afford the statute that reading most coherent in principle, given the entire statutory scheme and the other valid rules in the field. McIntire v. Moore, 512 So.2d 687, 689 (Miss. 1987).
Our particular question is whether the major medical insurance SSLIC wrote for Vaughn is within the exemption for "disability" insurance found within Section 83-23-105. Such an exemption must appear in the language the legislature employed. Where no exemption appears, none will be imported. State v. Heard, 246 Miss. 774, 781, 151 So.2d 417, 420 (1963).
Vaughn argues that his policy is not "disability" insurance and, hence, not within Section 83-23-105's exemptions from coverage. To be sure, Vaughn's policy has not been denominated disability insurance. It is entitled Major Medical Policy or, more broadly, it is an accident and health policy. That these words are not "disability" does not mean they may not be synonyms, for a word is but the skin of a living thought not to be mistaken for that thought. If the thought reflected by each of the words is essentially the same, the proffered distinctions are seen illusions. Disability insurance by any other name is still disability insurance, to attempt a bad but instructive literary allusion.
Good reason appears for regarding that there is here that commonality of thought. Disability insurance, accident and health and major medical insurance are all first party insurance. Each insures against the same risk, i.e. that the insured shall, without regard to third party fault, suffer some accidental bodily injury or illness and thus incur financial loss. Claims under insurance policies denominated by any of the three labels are triggered by the same event, i.e., an accident or injury or illness suffered by the insured. To be sure, the benefits may differ, though nothing in the *543 name requires such. A so-called disability policy may provide coverage for earnings lost as a result of the accident, injury or illness, while an accident and health or major medical policy may insure against loss due to hospital bills, doctor bills and other related medical expenses. There is, of course, no reason on principle why a given policy may not insure against all such losses without regard to label.
We are not the first to have seen that the word disability in insurance parlance reflects the same thought as accident and health and major medical insurance.[3] Our statute is, with minor changes not relevant here, a Mississippi enactment of the National Association of Insurance Commissioners (NAIC) Model Bill drafted back in the 1960s, an historical fact we have recognized. Mississippi Insurance Guaranty Association v. Gandy, 289 So.2d 677, 681 (Miss. 1973) ("The Mississippi Insurance Guaranty Act is patterned after a uniform statute adopted in one form or another by nearly all of the states in the Union.").
In the Model Bill we find Section 3 defining the bill's scope in language identical to that found in our Section 83-23-105. The Official Comment to the Model Bill reads:
This bill focuses on property and liability kinds of insurance and therefore exempts those kinds of insurance deemed to present problems quite distinct from those of property and liability insurance... .
Significantly, the NAIC in December of 1973 approved the following explanation to Section 3 of the Model Bill:
Section 3 of the NAIC Model Bill presently includes among the accepted lines to which the Act applies, a number of kinds of insurance, including "disability insurance." This has caused confusion in some states because the Model Bill was enacted without change even though the state had no provision in its law for "disability insurance," referring to it as "accident and health insurance" or "health insurance." The drafters of the Model Bill intended that, for the purpose of this provision, the three terms be synonymous. In order to avoid confusion on this point the Committee recommends that if there is any doubt in any state that the terms are synonymous, the Model Bill be amended to conform to the terminology found elsewhere in the insurance code of the state in question.
As a result, a statement was added to the Comment to Section 3:
It is intended that the terms `disability insurance' and `accident and health insurance' be synonymous. Each state will examine its own statutes to determine which is the appropriate phrase.
Further evidence that our suggestion of synonymity is sound appears in Chapter 9 of Title 83 of the Mississippi Code entitled "Accident and Health Insurance". There we find an accident and health policy to be "any policy or contract of insurance against loss resulting from sickness or from bodily injury or death by accident, or accidental means, or both." Miss. Code Ann. § 83-9-1 (1972). A disability insurance policy, as that type policy is commonly understood, fits well within this definition.
All of this takes on special meaning in light of the 1985 enactment of the Mississippi *544 Life & Health Insurance Guaranty Association Act, Miss. Code Ann. §§ 83-23-201, et seq. (Supp. 1987).[4] This enactment "clearly states that its purpose is to protect policy owners of health insurance policies." In Warner v. Board of Trustees, 359 So.2d 345, 348 (Miss. 1978), we recognized that later acts of the legislature are of assistance in assigning appropriate meaning to a statute. If "disability" in Section 83-23-105 does not include "accident and health insurance," the 1985 legislation creating a guaranty association for accident and health policies becomes mere surplusage, since those policies would already have been covered in the 1970 Guaranty Act.
The Mississippi Life and Health Insurance Guaranty Association Act protects policy owners, insurers, etc., of "life insurance policies, health insurance policies, annuity contracts, and supplemental contracts... ." Miss. Code Ann. § 83-23-203 (Supp. 1987). The Association was created not only "to enable the guaranty of payments" but also to enable "continuation of coverage." Our law thus affords insureds holding life and health policies a different source of protection in the event of insurer insolvency.[5]
Coherence in principle and reason in law suggest that policies of the sort Vaughn holds be covered under the Mississippi Life and Health Insurance Guaranty Association Act, but not under both Acts. Unlike the Mississippi Insurance Guaranty Association Law which lists exclusions, the Life and Health Act states that it applies to "direct life insurance policies, health insurance policies," etc., (Section 83-23-205). As "disability insurance" is a subset of "accident and sickness insurance," such insurance is included within the protections of the Mississippi Life and Health Insurance Guaranty Association Act, but is excluded from the Mississippi Insurance Guaranty Association Law. Section 83-9-1 defines accident and sickness insurance as used in Sections 83-9-1 to 83-9-21 to include "any policy or contract of insurance against loss resulting from sickness or from bodily injury or death by accident, or accidental means or both." This supports the idea that "accident and sickness" embraces disability but not the converse.
We make clear what we decide  and what we do not decide. We do not consider that the legislature made a mistake and here correct it. We hold exempt from Mississippi Insurance Guaranty Association *545 Law coverage major medical insurance or accident and health insurance because the statute exempts it, because the legislature enacted language which best read affords that exemption, and because reading disability insurance as including Vaughn's policy is the reading which best fits the statutory language and is most coherent with the other valid rules in the field.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, P.J., and SULLIVAN, J., dissent by separate written opinion by ZUCCARO, J.
ZUCCARO, Justice, dissenting.
The majority opinion would this day state that a disability insurance policy is the same as and equivalent to a major medical insurance policy so as to deny Vaughn the protection of the Mississippi Insurance Guaranty Association. As disability insurance is inherently different from medical insurance, and as each covers risks of loss in no way similar, I respectfully dissent.

DOES THE MISSISSIPPI INSURANCE GUARANTY ASSOCIATION COVER MAJOR MEDICAL/HEALTH AND ACCIDENT INSURANCE POLICIES?
The scope of protection of MIGA is set forth in Miss. Code Ann. § 83-23-105 (1972), which provides that:
This article shall apply to all kinds of direct insurance except life, title, surety, disability, credit, mortgage guaranty, and ocean marine insurance. (emphasis added)
The underlined portion of the above statute is critical to any determination of the bounds of MIGA's protection in that an exception must appear plainly from the express words of the statute, and where no exception is made in positive words, the presumption is that the Legislature intended none. State v. Heard, 246 Miss. 774, 151 So.2d 417 (1963). Consequently, MIGA by its own terms insures against the insolvency of all insurance companies omitting only those specifically excepted. The crux of the issue presented is whether or not a "major medical" insurance policy can be equated to "disability" insurance so as to fall under a specific exception to the MIGA resulting in no coverage of the claim in issue.
In reviewing the "disability" exception of § 83-23-105, there must be given due regard to this Court's long-standing rule that where a statute is "plain and unambiguous" the rules of construction will not be resorted to. Heard, supra. The inquiry thus becomes whether "disability" insurance is an ambiguous term. In this regard, "disability insurance" is defined as "insurance coverage purchased to protect an insured during periods of incapacity from working." Black's Law Dictionary 416 (5th ed. 1979). Disability insurance protects an insured against the loss of earning capacity. Couch, Encyclopedia of Insurance Law, § 1.18 (2d ed. 1984). Further, disability insurance insures against the inability to pursue a livelihood arising either from accident or illness. Appleman on Insurance, § 23 at p. 60. The Social Security Act makes provision for disability insurance benefits which afford coverage resulting from the "inability to engage in any substantial gainful activity by reason of any medically determined physical or mental impairment." 42 U.S.C. § 423. As can readily be seen, the common thread running through all of the above definitions is that disability insurance exists for the sole purpose of compensating an insured who, due to accident or illness, has suffered a loss of wage earning capacity.
The majority opinion in the case sub judice would find that the term "disability" contains a latent ambiguity in that it is susceptible to more than one definition and meaning. In drawing this conclusion, the majority would draw from the comments to the National Association of Insurance Commissioners (NAIC) Model Bill, upon which MIGA is based, which equates and makes synonymous the terms "disability" and "accident and health." This idea stems from the fact that the California Insurance Guaranty Act, upon which the NAIC uniform bill is based, excepted in its original form *546 "disability" insurance which the California courts have interpreted as being synonymous with health and accident insurance.
In regard to California's definition of "disability" it must be noted that Appleman, in his treatise at § 23 states that, "Some states, such as California, use the term `disability insurance' as a generic term to embrace all forms of both accident and sickness insurance. This is not wholly accurate." So too, the path the majority would follow is "inaccurate." Additionally, the Mississippi Legislature never adopted any of the comments to the NAIC bill equating disability to accident and health.
The above facts become important when it is remembered that there can be no construction of a statute unless such is ambiguous. Heard, supra. As seen previously, the great weight of authority defines "disability" in a uniform and concise manner which does not equate to the simple payment of medical expenses covered under a major medical insurance policy. Further, the MIGA under its own terms states that it should be construed "liberally" so as to provide a mechanism by which claimants or policyholders of an insolvent insurance company may avoid financial loss. See § 83-23-103 and § 83-23-107. When this matter is considered jointly with this Court's rule that an exception to a statute cannot be created by construction, Roberts v. Mississippi Republican Party Executive Committee, 465 So.2d 1050 (Miss. 1985), it becomes readily apparent that the sounder course to follow would be to give "disability" its universally understood meaning. In fact, this Court has long adhered to the principle that words as used in a statute will be given their ordinary and familiar meaning. Allgood v. Bradford, 473 So.2d 402 (Miss. 1985); Green v. Weller, 32 Miss. 650 (1856).
One final matter needs to be laid to rest. The majority opinion looks to the passage of the Mississippi Life & Health Guaranty Association Act, Miss. Code Ann. § 83-23-201, et seq. (Supp. 1987) as an indication that the Legislature did not intend to insure health policies by enacting the MIGA. This rule of construction called pari materia, (and it is just a rule of construction) views the broad statutory scheme so that all statutes may be read as being harmonious with other statutes. As with any other rule of construction, pari materia is utilized only when a statute is found ambiguous. Hubbard v. McKey, 193 So.2d 129 (Miss. 1966). Use of this rule of construction to find legislative intent, as the majority opinion does, again hinges on first making the "inaccurate" finding that "disability" is ambiguous.

CONCLUSION
As the word "disability" has a readily attainable, and uniformly held meaning, it is unambiguous when taken in its common context, especially by those in the legal and insurance professions. This Court consistently mandates that terms in a statute be taken in just such a usual and commonly understood manner. There is no need to resort to the rules of construction which would look to extraneous evidence for guidance. I am convinced that the lower court's decision finding a "major medical" insurance policy not within the "disability" exception to the MIGA should be affirmed.
DAN M. LEE, P.J., and SULLIVAN, J., concur.
NOTES
[1] MIGA is a nonprofit, unincorporated legal entity organized and existing pursuant to Miss. Code Ann. §§ 83-23-111, et seq. (1972).
[2] This protection is afforded via post-claim, post-insolvency assessments. In order to cover the costs of handling claims due to the insolvency of a member and other expenses, the MIGA, after an insolvency, will assess each member insurer an amount "in the proportion that the net direct written premiums of the member insurer for the preceding calendar year bears to the net direct written premiums of all member insurers for the preceding calendar year." Miss. Code Ann. § 83-23-115 (1972). This amount is not to be greater than one percent of the member's net direct written premiums for the preceding year. Also, the assessment may be deferred, in whole or in part, if the assessment would cause the member's amount of capital or surplus to fall below what is required by law to transact business.
[3] See, e.g., 44 Am.Jur.2d Insurance § 1462 (1982), where the authors make the following statement in the introduction to their discussion of accident and health insurance: "It is to be observed that the disability features of life insurance policies are discussed herein, since such features amount in effect to health or accident insurance." In 1 Appleman, Insurance Law and Practice § 24 (1982), the author states:

It is often provided in life policies that payments will be made to the insured upon the occurrence of permanent and total disability. If the nature of the contract be strictly construed, when the policy provides that this is the case regardless of the cause of such disability, that portion of it partakes of a combined accident and health policy. If limited to causes arising from sickness, it is similar to a health contract; if limited to causes arising from accident, then that portion of it is really an accident policy.
See Continental Life & Accident Co. v. Songer, 124 Ariz. 294, 603 P.2d 921 (App. 1979) ("Disability insurance and the disability features of life insurance policies amount in effect to health or accident insurance."); Culbreth v. Prudence Life Insurance Co., 241 S.C. 46, 127 S.E.2d 132 (1962) (noting that the risk primarily insured against in a health and accident policy is "disability" resulting from sickness or accident).
[4] The policy and type of insurance at issue here is clearly within the coverage of this latter act. See Miss. Code Ann. § 83-23-205(1) (Supp. 1987). The only problem, however, is that Vaughn's policy was issued in May of 1983. The new act became effective April 9, 1985, and has no effect upon policies written prior to that date.
[5] The Maryland Court of Appeals commented on this difference between a fund for property and casualty insurers and one for life and health insurers in Maryland Life & Health Insurance v. Perrott, 301 Md. 78, 482 A.2d 9, 13-14 (1984). Noting that the Maryland Life & Health Insurance Guaranty Act was modeled on the NAIC Model Act, the Court stated:

The NAIC and commentators have recognized that a guaranty fund against insolvency of insurers in the life and health lines should differ from a fund concerned with insolvency of casualty and property insurers. In the latter fields, coverage is generally purchased for relatively short periods of time and the emphasis of a guaranty fund is on the payment of claims arising out of specific occurrences. In the life and health fields, however, policies have a continuity of coverage; there are cash values to be considered, and there is the likelihood that because of age or poor health many insureds will not be able to substitute comparable coverage for policies issued many years before. Hence, one important objective upon the insolvency of a life or health insurer is to provide for continuing the existing policies. For those reasons Section 8(3)(a) of the Model Act, which is comparable to Section 527(3)(a) of the Maryland Act, in part provides that the association "shall . .. [g]uarantee, assume, or reinsure, or cause to be guaranteed, assumed or reinsured the covered policies of the impaired insurer... ." See Statement of the American Life Convention, the Health Insurance Association of America, and the Life Insurance Association of America to the NAIC Subcommittee to Study Life and Disability Insurance Insolvencies and Prepare any Necessary Legislation, IIB, NAIC, Proc. 1072 (1970); Memorandum of the Executive Secretary's Office of the NAIC to the NAIC Subcommittee, Id. at 1075, 1077-78. And see generally Havens, Insurance Guaranty Laws: An Update on Litigation, 16 Forum 1183 (1981); Blaine, State Insurance Guaranty Laws  Constitutional Challenges, 12 Forum 808 (1977).