# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01386-SCT

*MISSISSIPPI DEPARTMENT OF WILDLIFE, FISHERIES AND PARKS, AND DR. SAM POLLES, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE MISSISSIPPI DEPARTMENT OF WILDLIFE, FISHERIES AND PARKS*

*v.*

*MISSISSIPPI WILDLIFE ENFORCEMENT OFFICERS' ASSOCIATION, INC.*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/97 |
| TRIAL JUDGE: | HON. WILLIAM HALE SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | KENNETH E. MILAM |
| | WALTER J. BRAND |
| | W. THOMAS McCRANEY, III |
| ATTORNEYS FOR APPELLEE: | CHARLES L. BEARMAN |
| | REX D. HARVEY |
| | BRIAN P. ROMANO |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 8/19/1999 |
| MOTION FOR REHEARING FILED: | 02/17/1999 |
| MANDATE ISSUED: 08/26/1999 | |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Motion for rehearing, granted. The original opinion is withdrawn, and this opinion is substituted therefor.

## STATEMENT OF THE CASE

¶2. This matter is an appeal of a denial of request made under the Mississippi Public Records Act of 1983

(hereinafter "the Act"), Miss. Code Ann. §§ 25-61-1 *et seq.* (1991 & Supp. 1998), by the Mississippi Wildlife Enforcement Officer Association, Inc. (hereinafter "Association") to the Mississippi Department of Wildlife, Fisheries and Parks (hereinafter "Department") for all information and/or records pertaining to the accrued compensation time of the Department's employees. On February 25, 1997, the Association initiated this case by filing a Complaint in the Hinds County Chancery Court. On March 12, 1997, an Amended Complaint was filed adding Dr. Sam Polles (hereinafter "Polles") in his official capacity as the Executive Director of the Department, due to his action taken in that capacity. The Department and Polles (collectively referred to as the "Department") filed a joint answer to the Amended Complaint on March 28, 1997. On May 22, 1997, the Association filed a Motion for Summary Judgment, asserting that it was entitled to judgment as a matter of law. The next day the Department filed its Motion to Dismiss or, in the Alternative, for Summary Judgment.

¶3. On July 9, 1997, the chancery court entered its Opinion granting the Association's Motion and ordering that "[a]ll relief requested in the plaintiff's Amended Complaint is hereby granted, including its request that the defendants be assessed the statutory fine of $100.00 for their failure to comply with the act and their bad faith actions and conduct through the course of such noncompliance."

¶4. On July 16, 1997, the Association filed its formal Petition for Approval of Award of Attorney's Fees and Expenses, presenting the chancery court with evidence as to the amount of attorney's fees and other expenses incurred by it in challenging the Department's improper denial of the Association's request. On July 29, 1997, the Department filed a Response in Opposition to Plaintiff's Petition for Approval of Award of Attorney's Fees and Expenses and Motion to Reconsider Assessment of Civil Penalty, asserting (1) that it was improper for the chancery court to award attorney's fees and expenses in this matter, and (2) that the amount of such attorney's fees proffered by the Association was "patently unreasonable." Additionally, the Department contended that the assessment by the court of the statutory penalty of $100.00 was unfair to it. On August 4, 1997, the chancery court entered its Order Denying Motion to Reconsider which specifically held that the only issue which remained to be considered was "the reasonableness of the attorney's fee requested" and proceeded to establish a specific procedure for this issue to be resolved. On August 12, 1997, the Department filed its Objections to Plaintiff's Request for Attorney's Fees and Expenses, and a hearing was held on these objections on October 6, 1997.

¶5. On October 17, 1997, the chancery court entered a Final Judgment in favor of the Association. The court ordered the Department (1) to produce to the Association within 10 days of entry of the Final Judgment a complete list of all employees of the Department, in alphabetical order, last name first, setting forth their accumulated compensatory time ("comp time") as of July 1, 1996; (2) to identify any and all records containing information related to the requested information and provide information as to any and all such records destroyed by it and/or tampered by it during the period from June 1, 1996 to the present; (3) to pay the statutory fine of $100.00 due to its failure to comply with the Act and its bad faith actions and conduct throughout the course of this matter; and (4) to pay to the Association its expenses, including attorney's fees, in the total amount of $11,138.50 as provided by the Act and all costs in this matter as provided by Mississippi Rules of Civil Procedure 54(d). It is from this Final Judgment that the Department appeals and raises the following issues:

**I. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW IN RULING THAT EMPLOYMENT RECORDS MAINTAINED BY THE DEPARTMENT REFLECTING**

**THE ACCRUED COMPENSATION TIME OF ITS EMPLOYEES ARE SUBJECT TO DISCLOSURE UNDER THE MISSISSIPPI PUBLIC RECORDS ACT?**

**II. WHETHER THE CHANCELLOR ERRED IN FAILING TO CONSIDER THAT THE DEPARTMENT COMPLIED WITH THE ASSOCIATION'S RECORDS REQUEST IN A REASONABLE MANNER WHICH SATISFIED ANY OBLIGATION IMPOSED BY THE PUBLIC RECORDS ACT TO DISCLOSE THE INFORMATION SOUGHT BY THE ASSOCIATION?**

**III. WHETHER THE CHANCELLOR ERRED IN ASSESSING A $100.00 CIVIL PENALTY AND THE ASSOCIATION'S EXPENSES AGAINST THE DEPARTMENT BASED ON A FINDING THAT THE DEPARTMENT WILLFULLY AND KNOWINGLY DENIED THE ASSOCIATION'S PUBLIC RECORDS REQUEST?**

**IV. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW IN RULING THAT THE PUBLIC RECORDS ACT AUTHORIZES AN AWARD OF ATTORNEY'S FEES AS PART OF THE ASSOCIATION'S EXPENSES IN PURSUING THIS PUBLIC RECORDS REQUEST?**

**V. WHETHER THE AMOUNT OF EXPENSES AWARDED BY THE CHANCELLOR TO THE ASSOCIATION IS REASONABLE?**

## STATEMENT OF THE FACTS

¶6. On July 22, 1996, the Association's legal counsel, Rex D. Harvey (hereinafter "Harvey"), made a request under the provisions of the Act for "a list of all employees of the Department of Wildlife, Fisheries and Parks in alphabetical order, last name first, setting forth their accumulated 'comp time' as of July 1, 1996." In response to this letter, the Department provided a computer generated listing of accrued comp time for the 391 employees of the Wildlife & Fisheries Division of the Department as of August 1, 1996. However, the Department did not provide information for all 967 total Department employees nor did it provide information as of July 1, 1996. For this reason, on August 27, 1996, Harvey sent a second request for the information to the Department asking for a complete list of all Department employees. On September 6, 1996, Polles replied to this second request by providing an alphabetized list of the *names* of all employees of the Department, but asserting for the first time that the comp time information requested by the Association was exempt from disclosure:

> However, it is our understanding that Pursuant [sic] to Section 25-1-100 of the Mississippi Code of 1972, as amended, personnel records, including accumulated annual and sick leave information as well as accumulated "comp time", are exempt from the provisions of the Mississippi Public Records Act except as the requests of the individual employee or with his or her prior written consent. Therefore, we believe we can release such information only to the individual employee when

requested or with his or her prior written consent.

The Department asserts that the reason that it suddenly adopted this position with regard to the Association's request after it supplied the information as to some employees was that, upon further investigation of the propriety of the Association's request, the Department became concerned that the information and records being sought were confidential employee information.

¶7. On October 2, 1996, Harvey asked Polles to reconsider this denial, pointing out to him that the Department had already supplied the comp time information as to 391 employees. As for the asserted basis for the denial, Harvey provided Polles with a Mississippi Attorney General's Opinion construing that such compensatory time information rested in the same category as did information concerning a public employee's salary and thus, was clearly subject to disclosure under the Act. It was specifically noted that at no point did the Association request the underlying records concerning the reasons for the accumulation of any comp time nor any underlying personnel files pertaining to particular employees. On October 21, 1996, Polles issued another denial of the request, again citing § 25-1-100.

¶8. Following this, a dialog was attempted between the Association and the Department through the Attorney General's Office. Following these discussions, the Department requested an extension of time to reconsider the matter, which was granted by the Association. However, when it heard nothing further from the Department, the Association notified it on January 30, 1997, that it had until Monday, February 3, 1997 to respond or the Association would be forced to proceed with a civil action to obtain the public information. Having no further response from the Department by the deadline, the Association filed its complaint on February 25, 1997.

¶9. After the filing of this civil action, on April 24, 1997, the Department provided the Association a list of 947 Department employees' comp time for the period ending June 30, 1996. However, the names of the individual employees were not furnished with this list. The Department asserts that the reason it submitted this list over one year after the initial request was made of it and after suit was filed was that it attempted to comply with the Association's request in a manner which reasonably accommodated the competing interests at stake in this dispute. Thus, the Department has provided to the Association: (1) a computer-generated list of 391 named Department employees with their comp time provided as of August 1, 1996; (2) a computer-generated list of the names of all 947 Department employees but without any information as to their comp time; and (3) a computer-generated list of the comp time for 947 unnamed Department employees.

¶10. The Department asserts that this dispute centers on the identity of those employees in the Parks division of the Department who have accumulated comp time. However, the Association asserts that the dispute centers upon whether, under the Act, the Association is entitled to the information which it sought in its original public records request.

## DISCUSSION OF THE ISSUES
### Standard of Review

¶11. Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. This Court employs a *de novo* standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.

The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of the doubt. *McCullough v. Cook*, 679 So. 2d 627, 630 (Miss.1996) (*quoting Mantachie Natural Gas Dist. v. Mississippi Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss.1992); *Clark v. Moore Mem'l United Methodist Church*, 538 So. 2d 760, 762 (Miss.1989)).

**I. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW IN RULING THAT EMPLOYMENT RECORDS MAINTAINED BY THE DEPARTMENT REFLECTING THE ACCRUED COMPENSATION TIME OF ITS EMPLOYEES ARE SUBJECT TO DISCLOSURE UNDER THE MISSISSIPPI PUBLIC RECORDS ACT?**

**II. WHETHER THE CHANCELLOR ERRED IN FAILING TO CONSIDER THAT THE DEPARTMENT COMPLIED WITH THE ASSOCIATION'S RECORDS REQUEST IN A REASONABLE MANNER WHICH SATISFIED ANY OBLIGATION IMPOSED BY THE PUBLIC RECORDS ACT TO DISCLOSE THE INFORMATION SOUGHT BY THE ASSOCIATION?**

¶12. Since the Department's first two issues have overlapping analyses, the Court will consider these two assignments of error together.

¶13. The Department first asserts that the requested list of comp time for its public employees is exempt from disclosure under the provisions of Miss. Code Ann. § 25-1-100 which provides that "[p]ersonnel records . . . in the possession of a public body, . . . shall be exempt from the provisions of the Mississippi Public Records Act of 1983." Miss. Code Ann. § 25-1-100(1) (1999). The Department contends that any documents and/or records which reflect the accumulated comp time of the Department's employees constitute "personnel records" within the meaning of § 25-1-100, and such information is, therefore, exempt from the provisions of the Public Records Act.

¶14. It is true that there are no Mississippi cases addressing whether comp time records maintained pursuant to the Fair Labor Standards Act (hereinafter "FLSA") are subject to disclosure as public records. Furthermore, there are no Mississippi cases construing the scope of the personnel records exception in the present context. Thus, the Department urges this Court to rely on a handful of Attorney General's opinions to support its position that the exemptions to disclosure somehow control over the broad, general disclosure requirements of the Act. However, this is simply not in conformity with long-established legal principles dealing with interpreting such statutory language.

¶15. The Act declares the public policy of the State of Mississippi to be that:

> . . . public records shall be available for inspection by any person unless otherwise provided by this chapter; furthermore, providing access to public records is a duty of each public body and automation

of public records must not erode the right of access to those records. . . .

Miss. Code Ann. § 25-61-2 (1999).

¶16. The Act defines "public records" to include:

> . . . all books, records, papers, accounts, letters, maps, photographs, films, cards, tapes, recordings or reproductions thereof, and any other documentary materials, regardless of physical form or characteristics, having been used, being in use, or prepared, possessed or retained for use in the conduct, transaction or performance of any business, transaction, work, duty or function of any public body, or required to be maintained by any public body.

Miss. Code Ann. § 25-61-3(b) (1999).

¶17. Finally, Miss. Code Ann. § 25-61-5(1) specifically provides for "public access to records":

> Except as otherwise provided by sections 25-61-9 and 25-61-11, all public records are hereby declared to be public property, and any person shall have the right to inspect, copy or mechanically reproduce or obtain a reproduction of any public record of a public body in accordance with reasonable written procedures adopted by the public body concerning cost, time, place and method of access, and public notice of the procedures shall be given by the public body, or, in the event that a public body has not adopted such written procedures, the right to inspect, copy or mechanically reproduce or obtain a reproduction of a public record of the public body shall be provided within one (1) working day after a written request for a public record is made.

Miss. Code Ann. § 25-61-5(1) (1999).

¶18. The intent of the Legislature is manifestly clear from these provisions: public records which do not fall into a carefully defined exception provided by law are entirely open to access by the general public. With regard to the creation of narrow exceptions to this broad public policy, the Legislature provided that:

> The provisions of this chapter shall not be construed to conflict with, amend, repeal or supersede any constitutional or statutory law or decision of a court of this state or the United States which at the time of this chapter is effective or thereafter specifically declares a public record to be confidential or privileged, or provides that a public record shall be exempt from the provisions of this chapter.

Miss. Code Ann. § 25-61-11 (1999).

¶19. One specific exemption which was furnished in the Act when it was passed in 1983 is found under Miss. Code Ann. § 25-1-100 (1999), which provides that "certain personnel records" are exempt:

> (1) Personnel records and applications for employment in the possession of a public body, as defined by paragraph (a) of § 25-61-3, except those which may be released to the person who made the application or with the prior written consent of the person who made the application, shall be exempt

from the provisions of the Mississippi Public Records Act of 1983.

(2) Test questions and answers in the possession of a public body, as defined by paragraph (a) of § 25-61-3, which are to be used in employment examinations, shall be exempt from the provisions of the Mississippi Public Records Act of 1983.

(3) Letters of recommendation in the possession of a public body, as defined by paragraph (a) of § 25-61-3, respecting any application for employment, shall be exempt from the provisions of the Mississippi Public Records Act of 1983.

(4) Documents relating to contract authorization under § 25-9-120 shall not be exempt from the provisions of Mississippi Public Records Act of 1983.

¶20. In denying the Association's public record request, the Department relied upon this statute as the reason that the comp time information, and all information with regard to a public employee's compensation, salary, leave time, etc., were exempt from the disclosure. However, it is difficult to find any support for this position when one compares the broad, general provisions of the Act with the narrow exceptions of § 25-1-100. Section 25-61-11 dictates that any exemption to the Act must be "specifically" enumerated; yet, § 25-1-100 does not explicitly exempt from disclosure an employee's salary or accrued comp time record. This appraisal of the Act and § 25-1-100 is supported by the general rules governing statutory construction:

While there are some cases in which exceptions are liberally construed, particularly with respect to statutes subject to a strict construction, ordinarily a strict or narrow construction is applied to statutory exceptions to the operation of laws. Thus, in the resolution of ambiguities, courts favor a general provision over an exception, and one seeking to be excluded from the operation of the statute must establish that the exception embraces him. These rules are particularly applicable where the statute promotes the public welfare, or where, in general, the law itself is entitled to a liberal construction. . . .

. . . .

Statutes granting exemptions from their general operation must be strictly construed, and any doubt must be resolved against the one asserting the exemption.

73 Am. Jur. 2d *Statutes* § 313, at 463-64 (1974) (footnotes ommited).

¶21. It is also important to note that this Court has held that courts "have a duty to give statutes a practical application consistent with their wording, unless such application is inconsistent with the obvious intent of the legislature."*Marx v. Broom*, 632 So. 2d 1315, 1318 (Miss. 1994). Thus, if a statute "is not ambiguous, the court should simply apply the statute according to its plain meaning. . . ." *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992). The ultimate goal of the court is "to discern and give effect to the legislative intent."*Id.* This Court has also stated that an exception must appear in the language the legislature employed. *Mississippi Ins. Guar. Ass'n v. Vaughn*, 529 So. 2d 540, 542 (Miss. 1988). An exception cannot be created by construction. In *State v. Heard*, 246 Miss. 774, 151 So. 2d 417 (1963), the Court said:

> An exception cannot be created by construction, when none is necessary to effectuate the legislative intention. Ordinarily, an exception must appear plainly from the express words or necessary intendment of the statute. Where no exception in positive words is made, the presumption is the legislature intended to make none.

246 Miss. at 781, 151 So. 2d at 420. Accord, ***Roberts v. Mississippi Republican Executive Comm.***, 465 So. 2d 1050, 1053 (Miss. 1985) (Public Records Act case). Therefore, based upon the foregoing, it is obvious to this Court that the Department's reliance upon § 25-1-100 to withhold disclosure of the requested information is improper because no such specifically worded exemption exists.

¶22. The Department attempts to support its first issue with opinions of the Mississippi Attorney General dealing with the Act and its exceptions. In this regard, the Department analogized its position with those situations set forth in the opinions. While acknowledging that a public employee's gross salary information is subject to disclosure, the Department cites one Attorney General opinion to support its claim that the public is not entitled to access employment records and/or documents which reflect personal employment information such as the net salary information or exemptions of a public employee. Miss. A.G. Op. #93-0900 to J.K. Stringer, Jr. (March 23, 1994). It further contends that the public is not entitled to access the home addresses and/or telephone numbers of public employees and documents and/or records reflecting a public employee's pension and/or medical benefits. ***Id.*** (citing Miss. A.G. Op. 84-1015 to N.F. Smith (July 2, 1984) and Miss. A.G. Op. 92-0688 to Dr. Milton Walker (September 2, 1992). The Department concluded its argument by stating that accumulated comp time is personal information which, like tax and/or benefit information, should not be unnecessarily divulged to the public without careful scrutiny.

¶23. However, these opinions are in fact of no support to the Department. What the Department fails to point out is that there are specific, narrowly drawn exceptions to the general provisions of the Act pertaining to the information held to be exempt by the Attorney General. For example, Miss. Code Ann. § 27-3-77 (1999), specifically provides that information in the possession of a public body concerning a person's individual tax payment or status, shall be exempt from disclosure under the Act:

> Records in the possession of a public body, as defined by paragraph (a) of section 25-61-3 which would disclose information about a person's individual tax payment or status, shall be exempt from the provisions of the Mississippi Public Records Act of 1983.

This statute was the basis of the Attorney General's opinion in Stringer. Turning to the Department's next analogy, Miss. Code Ann. § 25-11-119(3) (1999), sets forth that the Board of Trustees of the Public Employees' Retirement System of Mississippi (and **only** this agency) "shall not disclose the name, address or contents of any individual member records without the prior written consent of the individual to whom the record pertains." For this reason the Attorney General held in the Walker opinion that:

> The 1985 amendment to the statute made it clear the 1) all books, accounts, and records would be kept in the general office of the board and were public records, except for individual member records, and 2) that the system shall not disclose the name, address or contents of any individual member records without the prior written consent of the individual to whom the record pertains. It would appear the clear intent of the above statutory changes to the Retirement Law to make the name, address and contents of member records privileged or confidential information which was not subject

to the Mississippi Public Records Act.

Miss. A.G. Op. 92-0688 to Milton Walker (September 2, 1992) at 2 (denying request for a printed list of the names and addresses of all retired teachers and school employees).

¶24. Furthermore, the Department is completely wrong concerning any alleged exemption pertaining to the disclosure of current employees' names and addresses. Miss. A.G. Op. To Singletary (June 10, 1987) at 1.

¶25. Indeed, in these opinions, the Attorney General made certain that the exemptions to the Act remained within the narrow parameters of the given statutory exception. For example, the Attorney General made it clear in the Walker opinion that all other records held by the Retirement System Board were "public records" falling under the disclosure provisions of the Act. In the other opinions cited by the Department , the Attorney General has drawn clear boundaries around the exempt material and squarely asserted that other public information for which no specific exemption exists, such as an individual public employee's name and gross salary, is subject to disclosure. This follows the general rules of statutory construction. *Vaughn*, 529 So. 2d at 542.

¶26. In this regard, it is interesting to note the Department's argument with regard to the A.G. Op. #92-0379 to Richard A. Oakes (May 20, 1992). It contends that the situation dealt with in Oakes, a request for leave time records of public school teachers, is distinguishable from its current situation because the public's right to know how many times a public employee misses work arguably outweighs that employee's privacy interests in keeping such information confidential. The Department further argues that comp time is different because it is earned, and as such depends on the personal work habits of the individual public employee. However, this argument is flawed. Both situations, leave time and comp time, deal with the work habits of an employee and are earned by the employee. The Department's argument also ignores the fact that sick leave time is also accumulated by a public employee based upon the number of days worked, just as comp time is. In fact, it was the Department which made this connection between the two types of leave time in Polles' letter denying the request of the Association:

> However, it is our understanding that Pursuant [sic] to Section 25-1-100 of the Mississippi Code of 1972, as amended, personnel records, **including accumulated annual sick leave information as well as accumulated "comp time"**, are exempt from the provisions of the Mississippi Public Records Act.

(emphasis added). In this letter, Polles regarded leave time and comp time in the same category of records that should be exempt. He and the Department now assert that leave information should be disclosed. Thus, it would follow that an employee's comp time is also a public record which should be disclosed. Therefore, the Department's first assignment of error is without merit.

¶27. The Department next asserts that, even if the accumulated comp time records are public records subject to disclosure, it complied with the Association's request in a manner which balances the interests at stake in this dispute, the public's right to access public information versus the right of the Department's employees to have personal employment information kept private. It should be noted that the Department makes this argument without citing any supporting authority that these employees have a privacy interest in this information. Although it is true that Mississippi has no case law on this issue, many other jurisdictions throughout the country have reached a completely contrary rule of law that public employees do not enjoy

such a privacy right or, if they do, this right is outweighed by the public's right to know the details of their government, how it functions, and how the public's tax dollars are being spent.

¶28. In a case whose facts mirror those addressed in the Oakes Attorney General opinion, the Massachusetts Supreme Judicial Court, in ***Brogan v. School Committee of Westport***, 516 N.E.2d 159 (Mass. 1987), considered the question of the right of access to public school committee's employees' attendance and absentee records. The school committee provided summaries of the absentee records and the records themselves but with all employee names deleted. Following receipt of this, the plaintiffs pressed their demands for unexpurgated records, contending that such were public records subject to disclosure under the Massachusetts Public Records Law, Mass. Gen. Laws ch. 66 § 10 (Michie/Law Co-op. 1986). The committee refused to make any further disclosures, contending that their requested records fell under the exemption for "personnel and medical files or information." ***Brogan***, 516 N.E.2d at 160. In construing the committee's argument, the Massachusetts Supreme Judicial Court agreed that personnel and medical files or information "'are absolutely exempt from mandatory disclosure where the files or information are of a personal nature and relate to a particular individual.'" ***Id.*** (*quoting **Globe Newspaper Co. v. Boston Retirement Bd.**,* 446 N.E.2d 1051 (Mass. 1983)). However, the Court found that the plaintiffs:

> . . . seek information only as to the names of the school committee's employees, and the dates and generic classification, e.g., "sick day," personal day," etc., of their absences. **These are not "'intimate details' of a 'highly personal' nature," the "kind of private facts that the Legislature intended to exempt from mandatory disclosure".** The [plaintiffs] have not requested any information of a personal nature, such as the medical reason for a given absence or the details of family emergencies, nor does the record indicate that any of the absentee records involved such information.

516 N.E.2d at 160 (citations omitted)(emphasis added).

¶29. A case arising out of New York also deals specifically with the issue of the requesting parties' entitlement to accrued leave time or absentee records. In ***Buffalo News v. Buffalo Mun. Hous. Auth.***, 558 N.Y.S.2d 364 (N.Y.App. Div. 1990), a newspaper made a request pursuant to New York's Freedom of Information Law, N.Y. Pub. Off. Law § 84 *et seq.*, for public employee payroll and disciplinary records. This request was denied by the governmental agency on the grounds that the information fell under the exemption protecting material which, if disclosed, would constitute an unwarranted invasion of personal privacy under the Public Officers Law, § 89(2)(b)(iv). The New York Supreme Court, Appellate Division, disagreed, asserting that statutory exemptions are to be narrowly interpreted and that the burden lies upon the agency to show that the requested material falls squarely within the statutory exemption. ***Id.*** at 365. The court then made the following pronouncements:

> First, records regarding the days worked, leave taken with or without pay, and leave accrued by employees are by their very nature relevant to the day-to-day operations of the agency. Second, respondent has failed to establish how the release of these records would result in economic or personal hardship to the subject party. The possibility that these records can be used to discover other financial information is patently insufficient. . . .

***Id.*** *See also **Capital Newpapers Div. v. Burns***, 496 N.E.2d 665, 667 (N.Y. 1986) (stating that

exemptions are to be narrowly construed to provide maximum access, and the agency seeking to prevent disclosure carries the burden of demonstrating that the requested material falls squarely within an exemption).

¶30. In *State ex rel. Petty v. Wurst*, 550 N.E.2d 214 (Ohio Ct. App. 1989), a private citizen had made a request under the Ohio Public Records Act, Ohio Rev. Code Ann. § 149.43, for payroll records of county employees, including name, classification or job title, salary rate and total compensation of each and every employee paid from general funds as of those dates. *Wurst*, 550 N.E.2d at 215. The county provided certain information, but refused to surrender any information related to total compensation for individual employees, contending that such was exempt under Ohio law since it would constitute an invasion of the employees' privacy. An action was then brought by the private citizen for this claimed exempt information. In construing the citizen's request in the context of the Ohio Public Records Act, the Ohio Court of Appeals first declared that:

> public policy requires a liberal construction of the provisions defining public records and a strict construction of the exceptions. Any doubt must be resolved in favor of disclosure.

*Wurst* at 216. (citations omitted).

¶31. Turning to the county's ground for objecting to the disclosure, the court defined an "invasion of privacy" as occurring "'when disclosure would subject a person to embarrassment, harassment, physical danger, disgrace, or loss of employment or friends.'" *Id.* (*quoting Kilroy v. National Labor Relations Bd.*, 633 F. Supp. 136, 143 (S.D.Ohio 1985), *aff'd*, 823 F.2d 553 (6th Cir. 1987)). With this established, the court held that "[s]uch consequences are unlikely to result, at least to any measurable extent, from the disclosure of a county employee's name, classification or job title, salary rate and gross salary" and, therefore, this concern could not "outweigh the public's right to know." 550 N.E.2d at 216. Noting that the information had been found to be subject to disclosure in other contexts, the court concluded that the information sought by the private citizen is a matter of public record and must be disclosed as a matter of law. *Id.* at 217.

¶32. What emerges from these cases are the following principles: (1) there is to be a liberal construction of the general disclosure provisions of a public records act, whereas a standard of strict construction is to be applied to the exceptions to disclosure; (2) any doubt concerning disclosure should be resolved in favor of disclosure; (3) compensation information on public employees, such as gross salary and accrued leave time, is subject to disclosure; and (4) such disclosure does not violate a public employee's right to privacy. These guidelines leave little doubt that the information sought by the Association is public and does not fall under any specific, narrowly construed exemption to the Act. Furthermore, this Court must keep in mind the broad public policy goals at work in this case, as set forth in the Act itself and found in the case law construing such statutes. There is no argument that accrued comp time can be paid out of the public treasury, and that this forms a part of the public employee's compensation benefits. Therefore, the chancery court did not err in finding that the Association was entitled to the information requested by it. As stated previously, the Department's first assignment of error is without merit.

¶33. Furthermore, based upon this persuasive authority and the plain meaning of the Act itself, there was no justification for the Department's assertion that it somehow met a balancing of interests. As such, this Court finds that the Department's second assignment of error is also without merit.

¶34. It is also important to note that the Association's request was narrowly drawn. It did not seek the underlying personnel records concerning the reasons that comp time was accumulated by a particular employee, nor the reasons a particular employee used or did not use his or her comp time. Rather, the Association sought only a list of the Department employees with each individual's comp time as of July 1, 1996. Thus, even assuming that some privacy interest was at stake, there was no possible intrusion into that area by the Association's request. For this reason as well, the Department's second assignment of error is without merit.

### III. WHETHER THE CHANCELLOR ERRED IN ASSESSING A $100.00 CIVIL PENALTY AND THE ASSOCIATION'S EXPENSES AGAINST THE DEPARTMENT BASED ON A FINDING THAT THE DEPARTMENT WILLFULLY AND KNOWINGLY DENIED THE ASSOCIATION'S PUBLIC RECORDS REQUEST?

¶35. The Department also asserts that the chancellor erred in assessing a $100.00 civil penalty and the Association's expenses against the Department based on a finding that the Department willfully and knowingly denied the Association's public records request.

¶36. Section 25-61-15 provides as follows:

> Any person who shall **wilfully and knowingly deny** to any person access to any public record which is not exempt from the provision of this chapter shall be liable civilly in a sum not to exceed one hundred dollars ($100.00), plus all **reasonable expenses** incurred by such person bringing the lawsuit.

Miss. Code Ann. § 25-61-15 (1999) (emphasis added).

¶37. The Department asserts that it was legitimately concerned about the implications of the Association's request on the privacy rights of the Department's employees, and that it should not be penalized because there is no authority addressing the issue of whether accrued comp time records maintained pursuant to the FLSA are non-exempt public records subject to mandatory disclosure.

¶38. We agree that the Department had no direct Mississippi authority to guide it to release the accumulated "comp time" records for its employees. However, as outlined earlier, there is a great deal of authority from other jurisdictions which should have guided the Department to the same conclusion reached by the chancery court, including authorities on the issue of whether there was any privacy interest at stake. The Department also acted against the opinions of its own legal counsel, the Mississippi Attorney General.

¶39. The specific findings of the chancellor in his July 9, 1997, Opinion stated that the Department acted in disregard of the plain, unambiguous language of the Act, against the opinions and advice of the Mississippi Attorney General's Office, and in complete bad faith.

¶40. It is well established that a "chancellor's rulings on findings of fact will not be disturbed unless manifestly wrong or clearly erroneous." *Bank of Mississippi v. Southern Mem'l Park, Inc.*, 677 So.2d 186, 191 (Miss. 1996) (*citing Denson v. George*, 642 So.2d 909, 913 (Miss. 1994)). While the Department did not have direct Mississippi authority to guide it to release the accumulated "comp time"

records for its employees, it did have the benefit of precedent which made it clear that the legislature intended for public records to be defined broadly, while the exceptions are construed narrowly. Moreover, it was the opinion of the Mississippi Attorney General, the Department's legal counsel, that the Association's request should have been fulfilled. Finally, the inconsistent positions taken by Polles combined with the fact that the Department did turn over the records of 391 employees provides ample support for the chancellor's finding that the Department willfully and knowingly denied the Association access to non-exempt public records.

¶41. As such, we find that the chancery court acted well within its discretion in reaching its factual findings and was then required to make the award it did pursuant to Miss. Code Ann. § 25-61-15. Thus, this assignment is without error.

### IV. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW IN RULING THAT THE PUBLIC RECORDS ACT AUTHORIZES AN AWARD OF ATTORNEY'S FEES AS PART OF THE ASSOCIATION'S EXPENSES IN PURSUING THIS PUBLIC RECORDS REQUEST?

¶42. The Department asserts that the chancery court erred because the Act does not authorize an award of attorney's fees.

¶43. "A trial court's decision on attorneys' fees is subject to the abuse of discretion standard of review." *Bank of Mississippi v. Southern Mem'l Park, Inc.*, 677 So. 2d 186, 191 (Miss. 1996) (*citing Barber v. Barber*, 234 Miss. 89, 105 So. 2d 630 (1958)). It is well settled that attorney's fees are not to be awarded unless a statute or other authority so provides. *McLain v. West Side Bone & Joint Ctr.*, 656 So. 2d 119, 123 (Miss. 1995). Therefore, no fees or penalties should be imposed where there is no legislative authorization.

¶44. To be assessed with reasonable expenses, including attorney's fees, according to Miss. Code Ann. § 25-61-15, there must be a finding of willful and knowing denial. Such is the case here.

¶45. Under Miss. Code Ann. § 25-61-15 (1999), the assessment to be made against a government entity for willfully and knowingly denying a public records request shall include "all reasonable expenses incurred by such person bringing the lawsuit." The Department asserts that the word "expenses" does not include within its parameters attorney's fees. However, a look at the comment to Rule 54(d) of the Mississippi Rules of Civil Procedure explains what is meant by the term "expenses" in Mississippi jurisprudence:

Three related concepts should be distinguished in considering Rule 54(d): These are costs, fees, and expenses. *Costs* refers to those charges that one party has incurred and is permitted to have reimbursed by his opponent as part of the judgment in the action. Although *costs* has an everyday meaning synonymous with *expenses*, taxable costs under Rule 54(d) is more limited and represents those official expenses, such as court fees, that a court will assess against a litigant. Costs almost always amount to less than a successful litigant's total expenses in connection with a lawsuit and their recovery is nearly always awarded to the successful party. See Miss. Code Ann. § 11-53-27 (1972) (successful party to recover costs, generally).

*Fees* are those amounts paid to the court or one of its officers for particular charges that generally are delineated by statute. Most commonly these include such items as filing fees, clerk's and sheriff's charges, and witnesses' fees. In most instances an award of costs will include reimbursement for the fees paid by the party in whose favor the cost award is made.

*Expenses* **include all the expenditures actually made by a litigant in connection with the action.** Both fees and costs are expenses but by no means constitute all of them. Absent a special statute or rule, or an exceptional exercise of judicial discretion, such items as attorney's fees, travel expenditures, and investigatory expenses will not qualify either as statutory fees or reimbursable costs. These expenses must be borne by the litigants. 10 Wright & Miller, [Federal Practice and Procedure, Civil] § 2666. See also 6 Moore's Federal Practice ¶¶ 54.01-43 (1972).

M.R.C.P. 54 (cmt.) (emphasis added).

¶46. From these definitions concerning what a court can and cannot award in a judgment, it is clear that the term "expenses" encompasses attorney's fees incurred by a litigant. Therefore, Miss. Code Ann. § 25-61-15 provides for the Association to be paid for all reasonable expenses, including attorney's fees, it incurred as a result of being forced to pursue this action.

¶47. Furthermore, the chancery court, pursuant to Rule 56(h) of the Mississippi Rules of Civil Procedure and noting the Department's bad faith actions taken in its denial of the Association's public records request, properly awarded attorney's fees to the Association.

¶48. Rule 56(h) states:

**(h) Costs to Prevailing Party When Summary Judgment Denied.** If summary judgment is denied the court shall award to the prevailing party the reasonable expenses incurred in attending the hearing of the motion and may, if it finds that the motion is without reasonable cause, award attorney fees.

M.R.C.P. 56(h) (emphasis original). The comment to this rule states:

Subsections (g) and (h) are intended to deter abuses of the summary judgment practice. Thus, the trial court may impose sanctions for improper use of summary judgment and shall, in all cases, award expenses to the party who successfully defends a motion for summary judgment.

¶49. The chancellor denied the Department's Motion to Dismiss or in the Alternative for Summary Judgment. Consequently, as Rule 56(h) authorizes the award of expenses and attorney's fees when summary judgment is denied and the court finds the motion without reasonable cause, the chancery court's order for the Department to pay $11,138.50 in attorney's fees was also proper under Rule 56(h). *Southwest Miss. Reg'l Med. Ctr. v. Lawrence,* 684 So.2d 1257, 1264-65 (Miss. 1996). This assignment of error is without merit.

### V. WHETHER THE AMOUNT OF EXPENSES AWARDED BY THE CHANCELLOR TO THE ASSOCIATION IS REASONABLE?

¶50. Finally, the Department argues that the amount of the expenses, including attorney's fees, awarded by the chancery court is patently unreasonable. The Department supports this proposition with the contention that the matter was disposed of by the chancery court on briefs without a hearing and that the chancery court made no specific finding as to the reasonableness of the Association's request.

¶51. This Court has held that in awarding attorney's fees, the record must reflect evidence, offered by the successful party, to support this award as being reasonable. Absent such proof, the chancery court would be in error in making this award. *Sanford v. Jackson Mall Shopping Ctr. Co.*, 516 So.2d 227, 230 (Miss. 1987).

¶52. The record of the case *sub judice* presents ample evidence as to time expended and the necessity of the fees. It should also be noted that the chancery court trimmed the Association's requested figure of $12,573.75 down to the final figure of $11,138.50. Therefore, because there is evidence to support the chancellor's award as being reasonable, this assignment of error is found to be without merit.

## CONCLUSION

¶53. For these reasons, we find that: (1) the employment records maintained by the Department reflecting the accrued compensation time of its employees are subject to disclosure pursuant to the Mississippi Public Records Act; (2) the Department did not comply with the public records request in a reasonable manner which would satisfy the obligation imposed by the Mississippi Public Records Act to disclose the information sought by the Association; (3) the chancellor did not err in assessing a $100.00 civil penalty and the Association's reasonable expenses against the Department based upon its adequately supported finding that the Department willfully and knowingly denied the Association's public records request; (4) the chancellor did not err in awarding the Association attorney's fees as part of its reasonable expenses in pursuing this public records request; and (5) the award of $11,138.50 in reasonable expenses and attorney's fees was not an abuse of discretion on this record.

¶54. Accordingly, we affirm the judgment below.

¶55. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE AND WALLER, JJ., CONCUR. SMITH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY COBB, J. MILLS, J. NOT PARTICIPATING.**

## SMITH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶56. I concur in part in the judgment to affirm as to Issues I and II. However, I respectfully dissent from the majority's judgment to also affirm as to Issues III, IV, and V.

¶57. The majority opines that the Department was correctly assessed a $100.00 civil penalty because it acted in "complete bad faith." The majority correctly states that

there is no Mississippi authority that could guide the Department to release the "comp time" records for its employees. Without any Mississippi authority for guidance, the Department could not have acted willfully and knowingly according to Miss. Code Ann. § 25-61-15 (1999). The Department was legitimately concerned with the privacy rights of its employees. For this reason, the Department is correct for arguing that it should not be penalized for these concerns, considering there is no Mississippi authority addressing the issue. The majority would require that the Department be responsible for the "great deal of authority from other jurisdictions." (Maj. Op. at 21). I disagree, as we have not previously required such action when this Court has not addressed an issue.

¶58. Secondly, the majority states that the Department acted in "complete bad faith." Again, without willfully and knowingly withholding the employee information, the Department could not have acted in bad faith. As mentioned above, the Department had no guidance from Mississippi authority in regards to the release of this information. Without such guidance, the Department certainly cannot be penalized for "complete bad faith."

¶59. For these reasons, the Department did not willfully and knowingly deny the Association access to this information, nor did it engage in conduct that can be classified as "complete bad faith." The chancellor's assessment of the $100.00 civil penalty was error under the circumstances of this case.

¶60. Regarding issue four, concerning the award of attorney's fees, the majority again states that due to the willful and knowing denial of information by the Department, attorney's fees were properly awarded to the Association. However, the same problem is present. There can be no willful and knowing denial by the Department when there is no Mississippi authority that can be examined for guidance. The Department cannot be responsible for expenses or attorney's fees because it did not act with willful and knowing denial as set out in § 25-61-15. For the same reasons, as to Issue four the judgment below should be reversed and rendered.

¶61. The fifth issue before this court is moot due to the fact that there should have been no penalty and no award of attorney's fees.

¶62. The judgment below should be reversed in part to the extent that it assessed a $100.00 civil penalty and that it ordered the Department to pay the Association's expenses and attorney's fees.

¶63. For these reasons, I respectfully concur in part and dissent in part.

**COBB, J., JOINS THIS OPINION.**